KENT KNOCK *v.* LYNN KNOCK
(14426)
(14429)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued December 3, 1992—decision released March 2, 1993

*Arnold H. Rutkin,* with whom, on the brief, were *Daiga Osis* and *Kathleen A. Hogan,* for the appellant in Docket No. 14426 (minor child).

*Veronica E. Reich,* for the appellant in Docket No. 14429 (plaintiff).

*Carolyn Richter,* with whom were *Jeanne G. Miterko* and *Claudine Siegel,* for the appellee in both appeals (defendant).

KATZ, J. In this marital dissolution action, the plaintiff, Kent Knock, and the counsel for the minor child, Moriah Knock, claim that the trial court improperly: (1) allowed into evidence, and relied upon, testimony of an expert witness (a) who had not been properly disclosed under Practice Book § 220 (D); and (b) who was not qualified to testify regarding the issue of custody and whose testimony was not relevant to the best interests of the child; (2) awarded custody of the parties' minor child to the defendant, Lynn Knock;[1] (3) exhibited bias against the minor child's appointed

---

[1] Because the minor child's claims on appeal are also raised by the plaintiff, we need not decide whether the minor child is a party to this action and capable of individually appealing.

counsel; and (4) limited the role of counsel for the minor child. The plaintiff also claims that the trial court abused its discretion in its financial orders concerning distribution of the marital property. We affirm the judgment of the trial court.

The trial court could reasonably have found the following facts. The plaintiff and the defendant were married in Seattle, Washington, on July 31, 1982. The plaintiff has a doctorate in chemistry from Arizona State University; the defendant attended the University of Washington for three years and ultimately obtained her college degree from Housatonic Community College in May, 1991. Although both parties worked at Boeing Aircraft in Seattle at the time of their marriage, the defendant was laid off within six months of the marriage and, except for holding a few sporadic jobs, has generally not worked outside the home since that time. In 1983, the plaintiff received an offer of employment at Sikorsky Aircraft and the parties moved to Trumbull. On December 26, 1984, the defendant gave birth to Moriah, the only child of the marriage. On March 6, 1990, the plaintiff brought a dissolution action.

The parties' marriage was beset by problems from the outset, including both verbal battles and physical altercations. The defendant accused the plaintiff of physical abuse, while the plaintiff characterized his actions as deflecting or restraining the defendant's attacks on him. Each party saw the other as the instigator of such disputes. The plaintiff occasionally bruised the defendant and withheld sex and affection because he did not think she deserved them. The plaintiff called the defendant derogatory names, countermanded her instructions to the minor child and generally treated her as a servant who was unable to please him. In 1985, the defendant went to a walk-in clinic and was referred to the YWCA battered woman's program. In 1987, the

plaintiff was arrested on the defendant's complaint that the plaintiff had physically abused her. The defendant attended counseling intermittently at the YWCA battered woman's program until 1990, when she moved out of the marital home with the minor child. During the dissolution proceedings, the defendant became involved with another man and became pregnant with his child. The defendant planned to marry the other man after the dissolution of the parties' marriage had become final.

The trial court heard expert testimony relating to the issue of custody from the family relations counselor, Jennifer Luise, from the court appointed evaluator, Mark Jay Gang, a licensed psychologist, and from Eduardo Baez, also a licensed psychologist. Gang, who met with the defendant, the plaintiff, the minor child and the defendant's fiance, recommended that custody of the minor child be awarded to the plaintiff. Baez, who met only with the plaintiff, also recommended that custody be awarded to the plaintiff. Luise, who met with the defendant, the plaintiff, the minor child and the defendant's fiance, recommended that custody be awarded to the defendant. The court also heard testimony pertaining to battered woman's syndrome by Evan Stark, a sociologist, who met with the defendant and concluded that she had been a victim of battered woman's syndrome.

The trial court rendered final judgment on June 12, 1991, dissolving the marriage of the parties on the ground that the marriage had broken down irretrievably. The dissolution decree awarded primary custody of the child to the defendant with reasonable visitation rights to the plaintiff. The trial court also entered specific financial orders, which will be discussed as they become relevant. The plaintiff and the minor child appealed from the judgment of the trial court to the

Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

## I

The plaintiff claims that the trial court improperly admitted Stark's testimony because: (1) the defendant had failed to comply with the disclosure requirements of Practice Book § 220 (D); and (2) Stark was not qualified to testify as to custody and his testimony was not relevant to the court's custody determination. We disagree.

## A

The plaintiff first contends that the trial court improperly admitted Stark's testimony because the defendant had failed to comply with Practice Book § 220 (D). Specifically, the plaintiff contends that the defendant violated Practice Book § 220 (D) by failing to make a timely written disclosure of Stark's name, the subject matter on which he was expected to testify, the substance of the facts and opinions to which he was expected to testify and the summary of the grounds for each opinion. Because of the defendant's noncompliance with the requirements of § 220 (D), the plaintiff claims that Stark's testimony should have been excluded and that the trial court had therefore improperly exercised its discretion in allowing him to testify.

The facts relevant to this claim are as follows. This case was claimed to the trial list on January 30, 1991, and the trial began on April 23, 1991. Prior to April 10, 1991, there had been two experts disclosed, the family relations counselor, Luise, and the court appointed psychologist, Gang.[2] Luise's evaluation favored the defend-

[2] General Statutes § 46b-3 provides in pertinent part: "For the purposes of any investigation or pretrial conference the judge presiding at any family relations session may employ the services of any . . . family counselor."

General Statutes § 46b-6 provides in pertinent part: "In any pending family relations matter the court or any judge may cause an investigation

ant, while Gang's position was neutral. Due to financial constraints, the defendant had not sought any additional expert assistance.

On April 10, 1991, Gang changed his recommendation to favor the plaintiff's position. On April 12, 1991, the plaintiff disclosed another expert witness, Baez, who also favored the plaintiff's position. At that point the defendant decided that expert assistance had become essential to her case. The defendant was able to obtain Stark as an expert within a short period of time. She disclosed the expert to the plaintiff by phone, the day before the trial commenced and more than three weeks before Stark was to testify. The plaintiff did not move for a continuance.

Practice Book § 220 (D) provides in relevant part that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner within 120 days from the date the case is claimed to a trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

to be made with respect to any circumstances of the matter which may be helpful or material or relevant to a proper disposition of the case." These statutes allow the court, in its discretion, to obtain a disinterested assessment of the circumstances of a case. *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 542 n.6, 429 A.2d 801 (1980); *Valante* v. *Valante*, 180 Conn. 528, 532, 429 A.2d 964 (1980).

The plaintiff concedes that the defendant orally disclosed her intention to use Stark as an expert witness on April 22, 1991, fewer than 120 days from January 30, 1991, when the case had been claimed to a trial list. The plaintiff claims, however, that the disclosure was not made in writing and that, even if it is found to be within the technical requirements of § 220 (D), the last minute disclosure imposed an unfair burden on the plaintiff.

Practice Book § 220 (D) does not explicitly require that the disclosure be in writing. The plaintiff has not cited, nor have we found, any case in which we have concluded that a writing is required. The discovery rules, however, "are designed to make a ' "trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." ' " *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 106, 476 A.2d 1074 (1984), quoting *United States* v. *Proctor & Gamble Co.,* 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958); see also *Pool* v. *Bell,* 209 Conn. 536, 541, 551 A.2d 1254 (1989). Although the text of the rule does not explicitly require the writing, in order for the trial court to proceed with the orderly flow of business, disclosure must be made in writing. It would be a cumbersome task for a trial court to determine a party's compliance with § 220 (D) without a written disclosure. The record discloses that the defendant did not comply with the requirements for a written disclosure of her intent to call Stark as an expert witness.

The trial court, however, had the discretion to allow Stark to testify despite noncompliance with § 220 (D), if good cause was shown. *Berry* v. *Loiseau,* 223 Conn. 786, 800, 614 A.2d 414 (1992); *Eslami* v. *Eslami,* 218 Conn. 801, 803, 591 A.2d 411 (1991); *Wilhelm* v. *Czuczka,* 19 Conn. App. 36, 43, 561 A.2d 146 (1989). "Neither § 220 (D) nor the cases interpreting it define

what constitutes 'good cause.' The language of the rule, however, makes clear that the trial court is to exercise broad discretion in determining whether good cause exists in a given case." *Berry* v. *Loiseau,* supra. In determining whether the trial court has abused its discretion, an appellate court should entertain every reasonable presumption in favor of the trial court's decision. *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985).

The defendant claims that because of financial constraints, she had not initially sought out an expert witness. She says she felt expert assistance became essential to her case only after Gang changed his position to favor the plaintiff and the plaintiff retained yet an additional expert witness. In light of the short period of time the defendant had to obtain an expert witness, the plaintiff's failure to ask for a continuance, implicitly suggesting that he had sufficient time within which to prepare for Stark, and the three weeks that the plaintiff actually had to prepare for cross-examination, there was evidence to support a finding of "good cause." The trial court, therefore, did not abuse its discretion in permitting him to testify.

B

The plaintiff and the minor child next claim that Stark's testimony was improperly admitted because he was not qualified to testify and his testimony was not relevant to the determination of custody. We conclude that Stark was qualified to testify as to battered woman's syndrome and that battered woman's syndrome is relevant to the determination of custody.

" 'The determination of the qualification of an expert is largely a matter for the discretion of the trial court.' " *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73 (1964). "The trial court's decision is not to be disturbed on appeal 'unless that discretion has been abused, or the error is clear and involves a mis-

conception of the law.' " *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973). In order to testify as an expert, an expert must demonstrate "a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue." Id.

The plaintiff and the minor child concede that Stark is an expert on the subject of battered woman's syndrome. At trial, it was established that Stark had a doctorate in sociology and a masters degree in social work. He had also trained health care providers in the area of domestic violence and its impact on the health of women. Further, Stark had been involved in research studies at Yale-New Haven Hospital on the subjects of battered women, the relationship between battering and child abuse and the effects of battering on batterers. Moreover, he had implemented treatment programs for batterers. In light of his credentials, we conclude that the trial court was well within its discretion in finding Stark qualified as an expert in the area of battered woman's syndrome.

The plaintiff and the minor child dispute, however, the relevance of Stark's testimony and whether Stark was qualified to testify on the issue of child custody. Citing to our decision in *Yontef* v. *Yontef,* 185 Conn. 275, 281, 440 A.2d 899 (1981), they contend that the trial court is required to focus on the parenting skills of the parties and not on their relationship. The plaintiff and the minor child claim that the trial court, in making the custody decision, emphasized the fitness of the parties as spouses instead of their fitness as parents.

The test of relevance is whether the expert's knowledge or experience is helpful to the fact finder in the determination of an ultimate issue. *Davis* v. *Margolis,* 215 Conn. 408, 416, 576 A.2d 489 (1990). The ultimate

issue in this case was the determination of the custody of the parties' minor child. General Statutes § 46b-56 (b) provides that, in making a custody determination, "the court shall be guided by the best interests of the child . . . ." See *Gallo* v. *Gallo,* 184 Conn. 36, 43, 440 A.2d 782 (1981) ("court must ultimately be controlled by the welfare of the particular child"); see also *McGaffin* v. *Roberts,* 193 Conn. 393, 408, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *Hall* v. *Hall,* 186 Conn. 118, 121, 439 A.2d 447 (1982); *Doe* v. *Doe,* 163 Conn. 340, 343, 345, 307 A.2d 166 (1972); *Bailey* v. *Mars,* 138 Conn. 593, 87 A.2d 388 (1952). Parenting skills are only one relevant factor to consider in determining what is in the best interests of the child. *Yontef* v. *Yontef,* supra; see *Dubicki* v. *Dubicki,* 186 Conn. 709, 717–18, 443 A.2d 1268 (1982) (the trial court did not abuse its discretion in considering the physical abuse of one spouse by the other spouse in making a custody determination).

Stark's testimony aided in establishing that the defendant displayed battered woman's syndrome and that the plaintiff had been abusive toward the defendant. Recent studies have indicated that it is detrimental to a minor child to be placed in the custody of a parent who batters the other parent. See L. Walker & G. Edwall, "Determination of Visitation and Custody in Divorce," Domestic Violence on Trial (Sonkin Ed., 1987) pp. 127–52; L. Crites & D. Coker, "What Therapists See that Judges may Miss," The Judges Journal 8, 42 (Spring, 1988). Additionally, in 1990, the United States Congress unanimously passed Concurrent Resolution 172 recommending that "for purposes of determining child custody, credible evidence of physical abuse of one's spouse should create a statutory presumption that it is detrimental to the child to be placed in the custody of the abusive spouse." H. R. Con. Res. 172, 101st Congress, 2d Sess. (1990). Moreover, in

1990, the National Council of Juvenile and Family Court Judges adopted official recommendations on improving court practice with respect to family violence. In section II, "Recommendations for the Courts," the Council adopted the following provision: "When the issue of family violence is found to exist in the context of a dissolution of marriage, domestic relations case of any kind, or in a juvenile court case: (a) the violent conduct should be weighed and considered in making custody and visitation orders. . . ."[3] National Council of Juvenile and Family Court Judges, "Family Violence Project, Family Violence: Improving Court Practice," 41 Juvenile and Family Court Journal 19–20 (1990).

In light of the above studies, it appears that the presence of battering in the household has, at a minimum, some effect on the parenting skills of both spouses and the child's response to the parents even after their separation. See National Council of Juvenile and Family Court Judges, Family Violence Project, supra; L. Walker, The Battered Woman Syndrome (1979) p. 59. We therefore conclude that testimony concerning battered woman's syndrome was relevant to the best interests of the child in determining custody. Accordingly, we conclude that the trial court did not abuse its discretion in determining that Stark's testimony was relevant to the issue of child custody.

II

The plaintiff and the minor child also claim that the trial court improperly relied upon Stark's testimony in

---

[3] Thirty-eight states and the District of Columbia have enacted legislation that requires the court to consider battering in intrafamily custody cases. See, e.g., Cal. Civ. Code §§ 4608 (b) and 4601.5 (Deering 1992); Mass. Gen. Laws c. 208, § 31 (West 1992); N.H. Rev. Stat. Ann. § 458:17 II (c) (1991); N.J. Stat. Ann. § 9:2-4c (West 1990); Wash. Rev. Code § 26.09.191 (2) (c); Wis. Stat. Ann. § 767.24 (2) (b) (c) (West 1989-90).

making its custody determination. After reviewing the trial court's memorandum, we conclude that the trial court properly considered Stark's testimony.

It is clear that the trial court considered battered woman's syndrome, the subject of Stark's testimony, as a factor in its custody determination. The trial court did not, however, rely solely on Stark's testimony in awarding custody of the minor child to the defendant. Rather, it considered Stark's testimony, in addition to other corroborating evidence, for the limited purpose of determining whether the defendant was a battered woman. The trial court allowed Stark to testify as to battered woman's syndrome and the effects of battering upon the victim and any children involved, and to give his opinion that the defendant manifested battered woman's syndrome.[4]

Other corroborating evidence presented to the trial court included police reports, which documented a domestic violence call to the parties' residence, and medical reports, which documented physical injuries sustained by the defendant. The trial court also heard testimony from the plaintiff's witness, Baez, that the minor child perceived the defendant as an ineffective and inadequate parent. Baez also testified that children who witness abuse of one parent by the other parent may have a poor perception of the abused parent.

The trial court also heard testimony that the plaintiff had frequently humiliated and verbally abused the defendant and had withheld sex and affection from her because he felt that she did not deserve them. Finally, Luise, the family relations counselor who studied the

---

[4] We need not decide whether Stark, as an expert in battered woman's syndrome, was qualified to render an expert opinion as to custody. We note that the trial court specifically ruled that it would not allow him to give his opinion as to custody. The trial court's reference to his testimony and the relevance thereof were strictly in connection with his expertise on the subject of battered woman's syndrome.

family for six months in order to prepare the family relations report, found that the plaintiff was a "stern, rigid individual who will not tolerate that which does not fully meet his standards or expectations" and that the defendant had "endured emotional and verbal abuse." The report recommended that custody of the minor child be awarded to the defendant.

In addition to police reports, medical reports and the family relations study, there was ample evidence, upon which Stark commented, that allowed the court to conclude that the defendant had been a victim of battered woman's syndrome. Stark's testimony provided the expert knowledge necessary for the trial court to apply the model of battered woman's syndrome to the facts before it and to conclude that the defendant fit within its parameters. That conclusion was relevant to the court's custody determination, which hinged on the court's ability to assess what was in the best interests of the child. We conclude that the trial court properly considered Stark's testimony in making its custody determination.

### III

The plaintiff and the minor child next claim that the trial court failed adequately to consider, as required by General Statutes § 46b-56 (b), the minor child's desire to live with the plaintiff and therefore incorrectly awarded the child's custody to the defendant. We disagree.

General Statutes § 46b-56 (b) provides that in making any order with respect to custody, "the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference . . . ." Section 46b-56 (b) does not require that the trial court award custody to whomever the child wishes; it requires only that the court take the

child's wishes into consideration. *Friedman* v. *Friedman,* 180 Conn. 132, 135–36, 429 A.2d 823 (1980); *Joy* v. *Joy,* 178 Conn. 254, 257, 423 A.2d 895 (1979); *Cotton* v. *Cotton,* 11 Conn. App. 189, 194, 526 A.2d 547 (1987). The ultimate concern of the trial court is to decide what is in the best interests of the child. *Yontef* v. *Yontef,* supra, 282; *Gallo* v. *Gallo,* supra, 43. Although the child's wish is one factor for the court to consider in making that decision, it is certainly not the only one. Accord S. Wizner & M. Berkman, "Being a Lawyer for a Child too Young to be a Client: A Clinical Study," 68 Neb. L. Rev. 201 (1989) (recommending that a child's views and preferences should be factored into counsel's recommendation, but should not be determinative).

Contrary to the plaintiff's claim that the trial court disregarded the child's wishes, a review of the trial court's memorandum of decision indicates that the trial court seriously considered the child's expressed desire to live with the plaintiff. In its memorandum of decision, the court expressed concern that a friend of the family had persuaded the child to make her decision as to where the child wanted to live. The court also noted that the child did not initially know where she wished to live, but rather had made the decision to live with the plaintiff shortly before the trial and perhaps only after speaking with appointed counsel.[5] The evidence permitted the trial court to conclude that the child's desire to live with her father was not in her best interest. The trial court, therefore, properly considered the statutory criteria of § 46b-56 (b) and did not abuse its discretion by deciding that the child's desire to live with the plaintiff was not in her best interest.

[5] Moreover, the trial court heard both Baez and Stark testify that a child that witnesses the abuse of one parent by the other, may have a less than desirable perception of the abused parent.

## IV

The plaintiff and the minor child also contend that the trial court improperly viewed the role of counsel for the minor child and exhibited bias against the child's counsel. They contend that they are entitled to a new trial. We disagree.

During the trial, counsel for the child examined witnesses, made evidentiary objections and otherwise participated in the court proceedings. On the fifth day of trial, as a result of an evidentiary objection by counsel for the minor child, a colloquy took place on the record between the court and counsel relating to the role of counsel for the minor child.

In the course of that exchange the court admonished the child's attorney for making evidentiary objections that the court viewed as favoring the plaintiff's position. Specifically, the court discouraged the child's attorney from raising objections and suggested that the child's attorney should wait for someone else to raise such objections. The court accused the counsel for the child of improperly "prejudging" the case. The court also admonished counsel for "making up her mind before hearing all the evidence" and suggested that she should properly remain neutral throughout the trial and, after hearing all the evidence, make a recommendation to the court at the end of the proceedings. Finally, the court indicated that counsel's actions would influence the court and diminish the weight given by the court to counsel's position.

It is clear that the trial court and counsel for the minor child disagreed as to the proper role of the attorney for a minor child in a custody proceeding. General Statutes § 46b-54 (a) allows the court to appoint an attorney to represent a minor child during a dissolution proceeding if "the court deems it to be in the best

interests of the child." Additionally, § 46b-54 (c) provides that "[c]ounsel for the child . . . shall be heard on all matters pertaining to the interests of any child, including the custody . . . so long as the court deems such representation to be in the best interests of the child." "The purpose of appointing counsel for a minor child in a dissolution action is to ensure independent representation of the child's interest and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation." *Schaffer* v. *Schaffer*, 187 Conn. 224, 224 n.1, 445 A.2d 589 (1982). The legislature has not delineated, nor has this court yet been presented with the opportunity to delineate, the obligations and limitations of the role of counsel for a minor child. We recognize that representing a child creates practical problems for an attorney and that this important issue, at some point, needs to be addressed. See R. Berdon, "A Child's Right to Counsel in a Contested Custody Proceeding Resulting from a Termination of the Marriage," 50 Conn. B.J. 150 (1976). Because counsel has failed to demonstrate any prejudice resulting from her difference of opinion with the trial court, however, this case is not an appropriate vehicle for a discussion of the role of counsel for a minor child. *Harkins* v. *Driscoll,* 165 Conn. 407, 409, 334 A.2d 901 (1973) (courts may not be used as a vehicle to obtain judicial opinions upon points of law if no actual and existing controversy exists).

Although counsel claims that the trial court improperly viewed her role as counsel for the minor child, there is nothing in the record that indicates that the trial court interfered with or undermined her ability to represent her client. In fact, counsel for the minor child concedes an inability to point to anything that she was precluded from doing during the proceedings. To the contrary, counsel for the minor child led the objections

to the defendant's expert, Stark, and the trial court frequently sustained her objections. The record further reflects that she zealously argued her case, fully cross-examined witnesses and fully participated in oral and written argument. The trial court's view of counsel's role, therefore, did not impair her ability to represent her client in an appropriate manner.

The plaintiff and the minor child further contend that the trial court exhibited bias in stating that the actions of the child's counsel would influence how the court viewed counsel's position. This issue was raised for the first time on appeal. "It is a well settled general rule that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial." *Gillis* v. *Gillis,* 214 Conn. 336, 343, 572 A.2d 323 (1990); Practice Book § 4185.[6] " ' "We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatis-factory, with the assignment of such errors as grounds of appeal." ' " *Timm* v. *Timm,* 195 Conn. 202, 205, 487 A.2d 191 (1985); *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 616, 236 A.2d 466 (1967). This court has also recognized, however, that a claim of judicial bias " 'strikes at the very core of judicial integrity and tends to undermine public confidence in the established judi-ciary. . . .' " *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982). " 'No more elementary state-ment concerning the judiciary can be made than that the conduct of the trial judge must be characterized

---

[6] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interest of jus-tice notice plain error not brought to the attention of the trial court."

by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part.' " Id., 168–69; *State* v. *Echols,* 170 Conn. 11, 13, 364 A.2d 225 (1975); see *State* v. *Conroy,* 194 Conn. 623, 633, 484 A.2d 448 (1984). We review this claim, therefore, only under a plain error standard of review.

Although the trial court's remark is of questionable propriety, the record is devoid of any manifestation of actual prejudice or bias on the part of the trial court. A party is entitled to a new trial only upon a showing that prejudice resulted from the trial court's actions. *State* v. *Gordon,* 197 Conn. 413, 425, 504 A.2d 1020 (1985); *State* v. *Echols,* supra. "In a jury case, such prejudice may be presumed absent mitigating circumstances." *Fair* v. *Warden,* 211 Conn. 398, 414, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 108 L. Ed. 2d 514 (1989). In a bench trial, however, "the court sits as the trier of fact, and thus a presumption of prejudice is not warranted." Id. Counsel was able to perform her role as counsel for the minor child as she saw fit. The issues raised in this appeal, including the claimed inability of Stark to testify, interference with the role of counsel for the minor child and the court's failure to consider the minor child's wishes in connection with the issue of custody, were all claims raised by the minor child's attorney. In each instance, the trial court considered her claims, and not once did it demonstrate any prejudice toward her position because of prejudice toward her or disagreement with the role she had assumed. Thus, she is unable to demonstrate that she was harmed by the court's actions. *State* v. *Mazzetta,* 21 Conn. App. 431, 442, 574 A.2d 806, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990). Counsel has not, therefore, shown such bias by the trial court as would warrant a finding by this court of plain error.

## V

Last, the plaintiff claims that the trial court failed to consider all the statutory criteria set forth in General Statutes § 46b-81[7] and therefore improperly distributed the marital property. We disagree.

The principal financial orders are as follows: (1) the plaintiff shall transfer title of the marital home to the defendant and the defendant shall hold the plaintiff harmless on the mortgage;[8] (2) by July 1, 1996, the defendant will either sell or refinance the marital property so as to remove the plaintiff's possible liability for the mortgage; (3) the plaintiff shall pay the defendant alimony in the amount of one dollar a year until the defendant remarries, dies or cohabitates; (4) both parties shall retain their own IRAs; (5) both parties shall retain their own automobiles; (6) both parties shall be responsible for their own attorney's fees and shall be jointly responsible for the fees of counsel for the minor child; (7) the parties' stock shall be divided equally between them; (8) the Sikorsky savings plan shall be

---

[7] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witness, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[8] The trial court found that the equity in the marital home at the time of trial was approximately $33,000. The court valued the house at $158,000 and noted that there were two liens on the property: a mortgage of $70,000 and a line of credit against which only $30,000 had been drawn upon prior to the institution of dissolution proceedings. The trial court found that after the institution of dissolution proceedings the plaintiff had taken an additional $25,000 against the line of credit for his own use. Therefore, the trial court concluded that the plaintiff had already "taken a substantial share of the equity."

divided as follows: (a) within thirty days of the date of judgment $8500 in taxable funds and $13,000 in nontaxable funds shall be delivered to the defendant; and (b) the defendant shall be responsible for the taxes on the $8500; (9) if there is a tax refund on the 1990 tax return, it shall be shared equally by the parties; (10) the defendant will have 60 percent interest in the amount of tax deferred savings in the Sikorsky account as of March 31, 1991; (11) the plaintiff shall keep the employee stock option plan funds, certain stock, any assets or income from his father's estate and all interest in additional accrued savings after April 1, 1991, and his pension.

The plaintiff contends that the trial court abused its discretion in issuing the financial orders because the court allegedly failed adequately to consider the "contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates" as required by General Statutes § 46b-81 (c). The plaintiff argues that since he was the primary financial contributor to the marriage, the trial court must not have sufficiently considered the contribution of each party in the acquisition, preservation or appreciation in value of their respective estates when it distributed the property in approximately equal shares.

In reviewing the trial court's decision, we are mindful that the trial court is accorded wide discretion in a dissolution action in distributing the marital property. *Rostain* v. *Rostain*, 213 Conn. 686, 689, 569 A.2d 1126 (1990). "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." Id., 693. "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." *Blake* v. *Blake*, 207 Conn. 217, 229, 541 A.2d 1201 (1988).

Contrary to the plaintiff's claim, the trial court carefully considered the financial contribution of each party as to each marital asset. After reviewing each party's financial contribution, the trial court concluded that "the financial part of the marriage has been totally the responsibility of the plaintiff." In dividing up property, however, the court must take many factors into account. *Yontef* v. *Yontef,* supra, 285–86. In addition to the financial contributions of each party, the court also properly considered the causes of the dissolution,[9] the age, health, station, occupation, amount and sources of income, vocational skills, employability, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. Moreover, the court "legitimately consider[ed] the need of the custodial parent to provide a stable and familiar residence" for the minor child. Id., 285.[10]

The plaintiff also claims that the trial court abused its discretion in failing to consider the disparity in legal fees and the potential appreciation in value of the marital home. "[T]he trial court must consider all the statutory criteria in determining how to divide the parties'

---

[9] The plaintiff contends that the trial court over emphasized fault in making its financial awards and essentially punished the plaintiff. We disagree. The causes of the dissolution of a marriage are a proper consideration in making a property assignment. General Statutes § 46b-81 (c); *Dubicki* v. *Dubicki,* 186 Conn. 709, 716, 443 A.2d 1268 (1982). There is nothing in the record to support the plaintiff's claim that the trial court acted to punish the plaintiff, rather than to divide equitably the assets of the parties on the basis of all the relevant facts and circumstances.

[10] Additionally, the plaintiff contends that the trial court abused its discretion in concluding that the plaintiff's withdrawal of equity was used solely for his own benefit, and not for the payment of debts accumulated during the marriage and home improvements. See footnote 8. "Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses." *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 14, 420 A.2d 1142 (1979). Therefore, we cannot conclude that the trial court incorrectly found that the plaintiff's withdrawal of equity was used for his own benefit.

property in a dissolution action." *Savage* v. *Savage,* 25 Conn. App. 693, 701, 596 A.2d 23 (1991); *Leo* v. *Leo,* supra, 5. "A trial court, however, need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Citations omitted). *Savage* v. *Savage,* supra. Accordingly, the trial court did not abuse its discretion in failing to provide a detailed discussion of the parties' legal fees and the potential appreciation in value of the marital home. After our review of the trial court's memorandum of decision, we are satisfied that the trial court reasonably and equitably divided the marital assets on the basis of all the requisite considerations.

The judgment is affirmed.

In this opinion the other justices concurred.