[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on October 4, 1974 and have two children of the marriage; Hoyin Tjio, born July 28, 1978 and Sunyin Tjio, born April 18, 1980. The plaintiff has resided continuously in the State for twelve months next proceeding the date of filing of the complaint and thus the court has jurisdiction.
The trial began as a limited contested dissolution but expanded into a contested proceeding when the parties' agreement as to visitation disintegrated. P. B. 474. CT Page 2447
Until 1985 when they came to Greenwich the parties lived in Singapore and Hong Kong where the defendant was a futures broker for Drexel Burnham Lambert, serving in a management capacity. While engaged in this employment, the defendant's annual income ranged from $50,000 in the early years to $400,000 at the end. At the time of their arrival in the United States the parties had amassed over $1,000,000 in cash and liquid assets. At that time, they purchased the present marital home for $880,000 for which they paid cash. From 1985 to 1989 the defendant was vice-president for Drexel, Burnham, Lambert in New York City at which he earned an average annual salary of $40,000. In 1989 the defendant voluntarily relinquished his "green card" to the immigration authorities and moved to the Far East to look for employment where he was, for all intent and purposes, economically unproductive. In December 1991 he returned to the marital home where he has attempted to find employment in the Far East but has been unwilling to commit to a starting date while this action is pending. He has had no earned income since December, 1991.
The plaintiff is a United States citizen, is a graduate of a London hotel school and has her B.A. and MBA from Columbia University. She last worked sixteen years ago as an assistant sales-banquet manager in the hotel industry. She suffers from no debilitative illness and generally is in good health. There was no evidence offered of her earning capacity but it is fundamental that management positions in the hotel business earn at least enough to live on.
For most of their marriage, particularly while living in the Orient, the parties lived elegantly, entertained regularly and travelled frequently. They put another $200,000 into improving the house and outfitted it with about $140,000 worth of furniture and furnishings.
As to the plaintiff, the monetary dispute revolves around (a) the extent of the plaintiff's jewelry collection, and (b) whether and to what extent she has inherited from her father who died in 1991. At the same time, the plaintiff claims that (a) the defendant has hidden assets either in Swiss bank accounts or elsewhere abroad, and (b) the debts which he shows on his financial affidavit are either not legitimate or uncollectible by his creditors.
I. The Jewelry CT Page 2448
The parties have stipulated that the jewelry which the plaintiff has disclosed has a value of about $36,000. The defendant asserts that she is hiding about $165,000 more. The evidence shows that when the plaintiff emigrated to the U.S. she brought with her numerous pieces of jewelry which were memorialized in photographs. While the total number of pieces far exceeds the number she has disclosed she explains that the excess belongs to her sister. The photographs made up two albums which the plaintiff says have been lost. Although the statement is implausible no evidence was offered to prove the existence of the jewelry.
II. The Inheritance.
The plaintiff testified that in her culture it is customary for a father to present his daughter with a dowry when she is married but not to include her in his estate at the time of his death. The defendant denies this but offered no evidence to refute the wife's statement. On the other hand, the court finds it a bit disingenuous for her to testify that she did not know whether any of her brothers inherited from their father, whom the evidence shows was a man of substantial means.
II. Defendant's Assets.
The plaintiff complains that the only substantial liquid asset that the defendant owned ($216,000 in mutual funds) he transferred to his brother in repayment of a loan four months after this action was commenced. The defendant says he took this action because his brother requested payment in view of the defendant's deteriorating financial condition. The defendant produced no written evidence of the loan and apparently it was interest-free. The defendant was unemployed at the time.
The plaintiff alleges that in doing so the defendant deprived the court of an opportunity to deal with a significant marital asset. Although the plaintiff does not allege a fraudulent transfer in the technical sense, the principles that govern such a cause of action nevertheless are relevant here.
"While neither marriage nor an action for dissolution serves in an of itself to transfer an interest in property from one spouse to another . . . the institution of judicial proceedings serves at least between the parties, to preserve the status quo from impairment by fraud, Molitor v. Molitor, 184 Conn. 530 (1981). A transfer made after notice of an actual or imminent action seeking CT Page 2449 alimony and support may be found fraudulent and may be set aside, Id. at 534. A conveyance is fraudulent if made with actual intent to avoid any debt or duty or if made without substantial consideration by a person who is or will be made insolvent thereby", Id. at 530 (emphasis supplied).
It is the court's belief that the payment was made to reduce the defendant's inventory of marital assets available for distribution even though the loan itself might have been legitimate. Thus, in the words of the court in Molitor, supra, the transfer was made "to avoid a duty."
The plaintiff produced no evidence to demonstrate that the defendant has hidden assets. By the same token, no evidence was presented to show that his listed debts are anything but bona fide. Notwithstanding, the defendant's credibility was casted into serious doubt when he testified that the reason he does not list an investment in Daiichi Winchester is because while it may have been his money that went into the company, he has relinquished all control over it to his brother as if it were a blind trust.
Another example of the defendant's lack of credibility is his attempted justification of his unemployed status. Since 1991 he has sought employment in the Far East while living in Connecticut. Moreover, he has consistently told prospective employers that he will not be available until after the divorce proceeding is over and cannot give them a starting date because he does not know how long the case will take. Such a method of operation cannot be accepted as constituting a sincere effort to gain employment.
The court has considered all the factors enumerated in General Statutes 46b-56, 46b-81, 46b-82 and 46b-84 and finds as follows:
(1) The allegations of the complaint have been proved and are true.
(2) The marriage has broken down irretrievably and therefore it is ordered dissolved. The court is unable to assign fault.
(3) The court is deeply troubled by the defendant's past and probable future work record. As noted above, the defendant has not earned anywhere near his capacity since prior to 1985. Secondly, since December of 1991, the defendant has made only pretentious efforts to obtain employment. Finally, it is manifestly clear that CT Page 2450 whatever employment the defendant accepts will be in a far eastern country where his earnings history will be difficult to track, can easily be disguised and where enforcement of this court's orders may be extremely difficult, if not impossible.
Additionally, the defendant's financial affidavit shows no current income or expenses nor was the defendant able or willing to project any. Furthermore, his earned income for each year back to 1985, by his own admission, is not truly representative of his earning capacity. In short, the court is concerned that any financial order which it may see fit to enter today will become a nullity for any or all of the above reasons.
When the plaintiff's duties as homemaker and child care provider change when the younger child completes college and to a lesser extent when she completes high school, she will be in a position to obtain employment in the field of endeavor for which she is trained. Thus, where the court to order periodic alimony it would be appropriate to limit it to a reasonable period of rehabilitation roughly coterminous with Hoyin's completion of college.
In her post trial brief, the plaintiff urges the court to base alimony and support orders on the defendant's earning capacity.
"In marital dissolution proceedings, under appropriate circumstances, the trial court may base financial awards on the earning capacity rather than the actual earned income of the parties . . . (citations omitted) when, as here, there is specific evidence of the defendant's previous earnings . . . (citations omitted). It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quitted or avoided obtaining employment in his field", Hart v. Hart, 19 Conn. App. 91 (1989).
Because the defendant clearly meets the test for invocation of the earning capacity rule, the court believes that it has the power to predicate the financial awards on the defendant's earning capacity. There is however, a broad divergence between his most recent annual earnings and his peak earnings of seven years ago. So, while the defendant's earning capacity will be given due consideration in fashioning relief it is believed that more effective relief can be granted if the court where to order the defendant to convey his interest in the marital home to the plaintiff. Accordingly, within thirty days of this decision the CT Page 2451 defendant shall convey to the plaintiff all of his right title and interest in and to 17 Hedgerow Lane, Greenwich, Connecticut, and shall thereupon relinquish exclusive possession to the plaintiff.
In making this determination the court is mindful that the defendant was the primary financial contributor to the acquisition and improvement of this property. On the other hand, the court must consider other factors in settling on a division of the parties' property. They are: (a) the fact that for 18 years the plaintiff acted as homemaker, traveling companion (both business and social) and hostess at entertainment events held in the home; (b) the high level station in life to which the plaintiff has become accustomed; (c) the plaintiff's opportunity to earn meaningful income in the field for which she is trained and (d) the probability or improbability that the defendant will devote his efforts conscientiously to meeting his financial obligations. Knock v. Knock, 224 Conn. 776 (1973).
(4) The defendant shall pay to the plaintiff $3,000 per month alimony on the first day of each month following this decision and continuing for ten years or until her death, remarriage or cohabitation with an unrelated male, whichever shall sooner occur. This period of time will afford the children the opportunity to complete her higher education and enable the plaintiff to prepare comfortably for re-entry into the job market.
(5) The defendant shall pay to the plaintiff as and for child support the sum of $1,000 per month per child commencing on the first of the month following this decision. The court has taken into consideration the child support guidelines and criteria promulgated pursuant to 46b-215a but for the reasons set forth at length above and for the further reason that the children will benefit from being able to live in the marital home through and beyond the age of 18 years, the court hereby finds that application of the guidelines would be inappropriate.
To the extent that such a remedy would be effective against wages earned in a far eastern country the court hereby orders a contingent withholding under P.A. 89-302 and the defendant is hereby advised of his rights by attachment of an "Advisement of Rights Re: Wage Withholding" (JD-FM-71).
(6) The defendant shall retain all rights and claim of right to: a) KEL Private Limited; b) the equity claim against Drexel, Burnham, Lambert Group, Inc., c) The Keogh/IRA account at CT Page 2452 Citibank; d) the Keogh/IRA at Central Provident, e) the bank accounts at Citibank and Fleet Bank; f) the nine hundred shares of Sime Darby; and, g) the bank accounts listed in his financial affidavit.
(7) The defendant shall be solely liable for the liabilities he lists on part three of his financial affidavit and in addition the defendant is ordered to pay before June 30, 1993 the unpaid tax lien on the marital home together with interest and penalties. The defendant shall indemnify and save the plaintiff harmless from all claims arising out of such liabilities.
(8) The defendant is ordered to pay $12,500 towards the plaintiff's attorneys fees within 90 days of this date.
(9) Until his alimony obligation is satisfied and to the extent available through his employer, the defendant shall take out and maintain employee group life insurance in the amount of $100,000.
As soon as he becomes employed, the defendant shall take out and maintain medical insurance coverage for the children so long as it is available through his employer. Such coverage should include major medical, dental and vision care, if available. The defendant shall have all of the rights and remedies available to her under46b-84(c) and both parties shall have all of the obligations imposed upon them by 46b-84(c). All unreimbursed medical and dental expenses shall be divided equally between the parties, except that the defendant shall pay all unreimbursed orthodontic expenses for each child, in full.
(10) The plaintiff shall retain ownership and exclusive use of the following:
a) The 1990 Toyota Previa
b) all jewelry disclosed by her and appraised
c) her pension plan and all bank accounts listed on her financial affidavit.
d) all household furniture, furnishings and decorations now located at the Hedgerow Lane house, except for the following items which the defendant shall remove from the premises within 90 days: CT Page 2453
 Court mandarin's gown Statue of the standing Buddha Statue of the Buddha in sitting meditation pose Teak desk and back bench in library Equal distribution of silverware, including gold goblets, crystalware, 1/2 share thereof Stone bust of Kwan Yin Bronze lion Stone dragons (1 pair) Queen Anne bureau "Antique" dining table and chairs (2) Ralph Gallo oil paintings Gold leaf panel 26" x 46" Mother-of-pearl semi-circular table 6-panel screen in sitting room Carved side table in library Personal properties — wardrobe, books, stereo set, laptop computer, photographic equipment, suitcases, etc.
(11) Plaintiff shall be responsible for all of the liabilities listed on her financial affidavit and shall indemnify and save the defendant harmless from all claims arising out of said liabilities.
(12) Sole custody of the children is granted to the plaintiff subject to the defendant's rights of visitation as follows:
a. The defendant shall have the right, at the children's individual option, to have visitation four weeks per year, no more than two weeks of which may be out of the United States. The defendant shall pay all transportation and lodging costs. He shall notify the plaintiff and the children on or before January 1 of each year of the proposed visitation weeks, which shall not be binding on the children. The visitation weeks for 1993 shall be designated within the next thirty days. Notice shall be by certified mail, return receipt requested.
b. The defendant shall have unlimited telephone access to the children. Such access shall be unobstructed and unimpeded by the plaintiff. The defendant shall provide the plaintiff with the address and telephone number of the place of visitation and the defendant shall notify the plaintiff immediately of any sickness or injury occurring during visitation and shall permit the children CT Page 2454 unlimited telephone access.
(13) The plaintiff shall within thirty days of receipt provide the defendant with copies of all report cards and other records relating to the children's academic achievements and physical and mental health.
(14) The parties shall consult with one another prior to making final decisions concerning choice of schools and other major matters affecting their education and as to extraordinary medical or dental treatment except emergencies, in which event the plaintiff shall notify the defendant immediately. Each party will advise the other immediately of any change in home or employment address and telephone number.
(15) In the event of an appeal, the above orders concerning custody and visitation shall be in effect pending final resolution of the appeal. Yontef v. Yontef, 185 Conn. 275 (1981).
MOTTOLESE, J.
ADVISEMENT OF RIGHTS
Re: Wage Withholding
 I. You have the right to present any evidence to the court as to why an order for withholding effective immediately should not be ordered.
 II. EXEMPTIONS: If your wages are subject to a withholding order, a portion of your wages will not be withheld. Only disposable earnings are subject to a withholding order. Disposable earnings means "that part of the earnings of an individual remaining after deduction from those earnings of amounts required to be withheld for the payment of federal income and employment taxes, normal retirement contributions, union dues and initiation fees and group life and health insurance premiums." The amount withheld may not exceed the maximum amount permitted under section 1673 of title 15 of the United States Code: If you are supporting a spouse or dependent child other than the spouse or child with respect to whose support the order is issued, the maximum amount of your disposable earnings that may be withheld is 50% of such earnings, unless you are twelve weeks or more in arrears in which case the maximum is 55% of such earnings. If you are not supporting a spouse or dependent child other than the spouse or child with respect to whose support the order is issued, the maximum amount of your disposable earnings that may be withheld is CT Page 2455 60% of such earnings unless you are twelve weeks or more in arrears in which case the maximum is 65%. In no event however, under state law may you be left with less than $135 of disposable earnings.
III. You have the right to claim the exemptions listed above or any other applicable state or federal exemptions with respect to wage withholding orders.
 IV. The computation of the amount withheld will be done by your employer based on information supplied by the court. If you believe that an incorrect amount of your wages is being withheld due to incorrect information being supplied to your employer and you would like the amount withheld modified, you must request a court hearing.
 V. You have a right to seek a modification of, or raise a defense to, the support order, by filing a proper motion with the court.
This is to certify that this document was read to me or read by me in a language that I understand. A copy of this statement has been given to me.
_________________________________ __________________________________ Signature Date
This is to attest that the above document was signed in my presence.
_________________________________ __________________________________ Signature/Title Date
Check the box below if the parties have completed the "Waiver" on the back of this form.
 "Waiver of Right to Immediate Wage Withholding Order" completed on the reverse side.
JD-FM-71 Rev. 9-91 Gen. Stat. 52-362 P.A. 91-391 CT Page 2456