[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Albert J. Fitzgibbons, III, purchased a sailboat mast from the defendant, Kenyon Sparcraft, Inc., d/b/a IMI Sparcraft (Sparcraft), of Guilford, and claims in a four count complaint that this mast did not perform adequately when used on his sailboat. According to the first count of the complaint, Sparcraft breached its implied warranty that the mast would be fit for its purpose of competitive yacht racing. The second count alleges that the defendant failed to properly repair the mast. The third count states that the defendant failed to make timely delivery of the mast to Finland, where Fitzgibbons' boat was under construction. The fourth count alleges that while the mast was undergoing repair it was further damaged as the result of negligence on the part of Sparcraft.
The defendant filed an answer generally denying the complaint, but did agree that it knew the mast was going to be used for competitive yacht racing. The defendant also filed two special defenses. The first claimed that the delay in delivering the mast and any defects in the mast were caused by the failure of the plaintiff and his agents to provide defendant with the proper specifications. The second special defense stated that even if there had been a breach of warranty, damages would be limited to the cost of replacement or repair pursuant to General Statute 42a-2-719.
The case was referred to Attorney Claudine Siegel, an attorney trial referee, in accordance with General Statutes 52-434(a)(4) and Practice Book 428 et seq. The attorney trial referee's report included a number of findings of fact, among which were: (1) Sparcraft agreed to construct a sailboat mast in accordance with specifications to be supplied by plaintiff; (2) defendant agreed to deliver the mast by March 20, 1989; (3) the plaintiff did not furnish any specifications until May 2, 1989; (4) in November, 1989, while the plaintiff's yacht was racing, the upper portion of the mast inverted and was rendered useless; (5) defendant agreed to repair the mast, and thereafter the defendant received new specifications indicating that Fitzgibbons' yacht had a displacement of 15,664 K, whereas the original specifications furnished to defendant in May, 1989, showed a displacement of 13,800 K; (6) the original mast conformed to the original specifications; (7) the mast after it was repaired by Sparcraft conformed to the revised specifications, which required a stiffer mast because the yacht had a greater displacement; (8) after the mast had been repaired in the spring of 1990, and while it was being delivered to plaintiff, the defendant's truck had an accident and a portion of the mast was damaged; (9) the mast was subsequently repaired by the defendant; and (10) the defendant attempted to deliver the new mast on April 10, 1990, but plaintiff refused delivery.
The attorney trial referee drew the following conclusions from these facts: (1) the original delay in delivering the mast was occasioned by CT Page 3737 plaintiff's delay in furnishing the required specifications; (2) the mast inverted because the plaintiff furnished to the defendant erroneous specifications, which were relied upon in constructing the mast; (3) although the mast was damaged while in defendant's custody; plaintiff failed to show any damages, because the defendant subsequently repaired the mast and was prepared to deliver it to the plaintiff. The report recommended that judgment enter in favor of the defendant on all counts.
In accordance with Practice Book 438, the plaintiff moved to correct the attorney trial referee's report claiming that the findings of fact should be amended in order to indicate, among other things, that: (1) the mast was defective because it was constructed in an unworkmanlike manner, and not because of incorrect specifications furnished by plaintiff; (2) Sparcraft had agreed to provide a new mast rather than a repaired mast, and the plaintiff was justified in rejecting the repaired mast; (3) after the inversion and the accident while the mast was on the delivery truck, the original mast was no longer usable; and (4) the mast as constructed by defendant was too light for competitive yacht racing. The referee declined to make any changes in her report.
The usual review of an attorney trial referee's report by this court consists of two tasks, according to Thermoglaze, Inc. v. Morningside Gardens, Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied,217 Conn. 811, 587 A.2d 153 (1991). The first is to determine whether "there was ample evidence to support the attorney trial referee's factual findings," and the second is to rule on whether "the conclusions reached were in accordance with applicable law." In this case, however, although Fitzgibbons did file objections to the acceptance of the report, Practice Book 440, he did not file exceptions asking this court to correct the report, and a transcript of the trial. Practice Book 439. It follows therefore that the factual findings by the referee must stand uncorrected. Ruhl v. Fairfield, 5 Conn. App. 104, 106, 496 A.2d 994 (1985) (our task is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions"). Failing to file exceptions constitutes in effect a "waiver" of the right to "attack the subordinate factual findings contained in the report." Bernard v. Gershman,18 Conn. App. 652, 655, 559 A.2d 1171 (1989).
Moreover, this court's authority in reviewing an attorney trial referee's recommendations is a limited one in any event. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not CT Page 3738 appear"; (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Also, Wilcox Trucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 425, 567 A.2d 1250 (1989), notes that "[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous."
Since we must accept the referee's findings of fact in the absence of any exceptions to the report, this court's task, according to Bernard v. Gershman, supra, 656, is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. The Appellate Court added that "[w]here evidence is in conflict, its probative force is for the trier of fact to determine." Id.
Reviewing the motion to correct, one senses that the plaintiff is attempting to substitute his own version of the facts for those found by the referee, which is a practice discountenanced in Argentis v. Gould,23 Conn. App. 9, 19, 579 A.2d 1078 (1990). The plaintiff claims, in effect, that there was testimony at the trial which was contrary to that credited by the referee. However, "[i]t is well settled that the fact finder determines with finality the credibility of witnesses and the weight to be given their testimony." Plikus v. Plikus, 26 Conn. App. 174, 177, 599 A.2d 392 (1991).
The objections by plaintiff to the acceptance of the referee's report contend essentially that: (1) the mast was damaged in a trucking accident while it was in the custody of the defendant, and the plaintiff did not have to prove negligence on the part of Sparcraft which was a bailee and hence responsible for the bailed property; (2) the referee should not have permitted the expert testimony of Tyson Goss as his name had not been disclosed pursuant to Practice Book 220; and (3) the defendant did not prove its special defense of "cure" as referred to in General Statutes 42a-2-508.
This case was originally reviewed by Judge Mottolese who ruled that two of the above objections had no merit, and I concur. As to the first claim that the mast was damaged while bailed to the defendant, the plaintiff failed to prove that he was damaged as a result of the mishap to the mast. The defendant, according to the referee's report, repaired the mast. With respect to the objection concerning the cure provisions of General Statutes42a-2-508, which permits a seller to cure defects, this statute does not appear applicable to this case at all. The referee did not invoke the statute, nor did the defendant plead it as a special defense.
Judge Mottolese did, however, remand the case to the attorney trial referee for a further articulation of the referee's reasoning for admitting the testimony of the defendant's witness, Goss. Specifically, the referee CT Page 3739 was directed to determine whether Goss was an "expert," and if so, whether there was "good cause" for permitting him to testify even though he had not been disclosed in accordance with Practice Book 220(D).[1] The referee responded by indicating that Goss was not an "expert" because he was an "employee" of the defendant, or if he was an expert, that he did not acquire his opinion as to why the mast broke "in anticipation of litigation or for trial," and hence was not within the parameters of 220(D). Because of these rulings, the referee did not address the issue of "good cause." Judge Mottolese remanded the case a second time so the referee could address this subject. The referee was also asked to consider whether an employee of a party could nevertheless be characterized as an expert in the light of the Supreme Court's decision in Mulrooney v. Wambolt, 215 Conn. 211,575 A.2d 996 (1990).
The referee in turn ruled that good cause for the admission of Goss' testimony existed because "plaintiff expected Goss to be defendant's main witness and to testify as an expert." She pointed out in this regard that all the business dealings between the plaintiff and/or his agents, Rodgers Yacht Sales, and the defendant company involved Goss. The order for the mast was placed with Goss. When the mast inverted, Goss went to inspect it and determine the cause. It was Goss who undertook to repair the mast, and it was to him that the plaintiff, through the Finnish boat maker, sent the revised specifications indicating that the yacht had a greater displacement than previously disclosed. Goss gave his opinion at the trial that the greater displacement warranted a stiffer mast, and that was the reason the mast had inverted. The referee also indicated that Goss had not formed his opinion in anticipation of litigation, but rather was an "actor or viewer" with respect to the transaction in question and therefore did not fall within the scope of 220(D).
The referee's determination that an employee of a party could not be considered an expert, or alternatively, that such a person does not fall within the scope of 220(D) if he was an "actor/viewer" and did not form his opinion in anticipation of litigation, appears to run counter to a decision of the Appellate Court in Yale University School of Medicine v. McCarthy,26 Conn. App. 497, 500, 602 A.2d 1040 (1992). "Thus, pursuant to Practice Book 220, a trial court may exclude expert testimony proffered by a party regardless of any agency relationship that may exist between the expert witness and the opposing party." The court also stated that the term "expert" refers to "all persons acquainted with the science or practice in question," without regard to any purported distinction between "treating and independent experts." Id. For example, a treating physician presumably forms an opinion at the time of treatment and not in anticipation of litigation, but he is still considered an "expert" and his status as employee or agent does not appear significant. CT Page 3740
However, the issue of whether good cause under Practice Book 220(D) exists remains to be resolved. According to Berry v. Loiseau, 223 Conn. 786,800, 614 A.2d 414 (1992), "[n]either 220(D) nor the cases interpreting it define what constitutes `good cause.'" The case adds that "the trial court is in the best position to assess the intent behind the behavior of the offending party and, therefore, its decision must be given great weight and deference." Id., 801. The trial court in Berry ruled that the testimony of two former employees of a defendant offered by the plaintiff was admissible on the theory that they were not "surprise" witnesses, and that their testimony "did not unduly prejudice the defendants." Id., 802.
Clearly, Goss was not a "surprise" witness in this case, as he was the principal player for the defendant, and the person whom Fitzgibbons and his agents asked to determine the cause of the inversion and to repair the mast. Moreover, again according to Berry, "[t]he action of the trial court is not to be disturbed unless it has abused its broad discretion, and in determining whether there has been such abuse every reasonable presumption should be made in favor of its correctness. . . . In determining whether there had been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." Id., 800. I believe that the referee could "reasonably conclude" that Goss was not a "surprise" witness and that the admission of his testimony would not "prejudice" the plaintiff. Id., 802. Hence, the plaintiff's objection to the admission of Goss's testimony is overruled.
In summary, no material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443. In the words of Practice Book 440, the conclusions "were properly reached on the basis of the subordinate facts found."
The plaintiff has also moved (#127) for a new trial because of the admission of Goss' testimony. Since we have already found that the referee properly exercised her discretion in admitting this testimony, there is no justification for a new trial. Knock v. Knock, 224 Conn. 776, 793, ___ A.2d ___ (1993), points out, "[a] party is entitled to a new trial only upon a showing that prejudice resulted from the trial courts's action." Plaintiff has made no such showing.
Judgment is entered in favor of the defendant Sparcraft on all counts in accordance with the recommendation of the attorney trial referee. Costs are to be taxed by the clerk.
So Ordered. CT Page 3741
Dated at Stamford, Connecticut, this 19th day of April, 1993.
William B. Lewis, Judge