CHERYL SCHULT *v.* JEFFREY SCOT SCHULT
(13482)

Dupont, C. J., O'Connell and Landau, Js.

Argued October 3, 1995—decision released March 19, 1996

*Carolyn Wilkes Kaas*, with whom, on the brief, were *Susan Cartier* and *Ronald DeMatteo*, certified legal interns, for the appellant (plaintiff).

*John J. Bennett*, for the appellee (intervenor).

*Elizabeth Gleason*, guardian ad litem.

*Colette Griffin*, for the minor child.

DUPONT, C. J. This appeal arises from the judgment dissolving the marriage between the plaintiff, Cheryl Schult, and the defendant, Jeffrey Scot Schult. The plaintiff and the defendant had only one child, who was born on October 6, 1988. The principal issue in this appeal is the proper construction and application of General Statutes § 46b-56b,[1] which creates a rebuttable presumption "that it is in the best interest of the child to be in the custody of the parent" in any dispute as to the custody of a minor child involving a parent and a nonparent. The trial court relied on a "showing that it would be detrimental to the child to permit the parent to have custody," as provided in the statute, to rebut that presumption. Accordingly, the court awarded sole

---

[1] General Statutes § 46b-56b provides: "In any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody."

physical and legal custody of the child to his maternal grandmother, Joan Radin, who is an intervenor in the dissolution action.[2] The plaintiff appeals from that judgment and from a subsequent judgment rendered on two postjudgment motions.[3]

The plaintiff filed a dissolution action on March 7, 1991, seeking (1) dissolution of her marriage to the defendant, (2) custody of their child, (3) child support, (4) alimony and (5) reasonable counsel fees. The defendant filed a cross complaint on April 26, 1991, which did not dispute the relief of dissolution of marriage, but which sought (1) custody of the child, (2) in the alternative to sole custody, joint legal custody of the child, and (3) child support.

In order to understand fully the unfortunate situation with which the trial court was confronted, it is necessary to spell out in some detail the background of the parties and the sequence of events that led to this appeal.[4] The plaintiff was married to the defendant on February 14, 1986. Their child has a history of emotional and psychological problems and developmental delays.

On April 18, 1991, shortly after the action for dissolution of marriage was initiated, the defendant moved out of the family home. On that same date, Steve Norman moved into the family home as a boarder. On the evening of November 19, 1991, Norman was baby-sitting while the plaintiff, a licensed nurse practitioner, was

---

[2] The child has resided with the intervenor since January 3, 1992.

[3] The trial court's initial judgment relates to the dissolution of the marriage and the custody of the child. The later judgment concerns two postjudgment orders relating to contempt and to the denial of the intervenor's motion for modification of the plaintiff's visitation rights.

[4] It is undisputed that the mother, the father, and the intervening grandmother all love the child. Although both the mother and the father initially sought custody, the father eventually agreed that it was in the best interest of the child to award custody to the grandmother. The defendant father is not a party to this appeal.

at work. The child was three years old at the time. Norman testified that about five minutes after the child had gone to bed, he came out of the bedroom and was crying. Norman observed that the child had a mark above his eye and treated the injury with an ice pack. After fifteen to twenty minutes, the child stopped crying and went back to bed. The following morning, Norman noticed that the child was limping and would not put any pressure on his leg. When the plaintiff returned home at 7:30 a.m., Norman told her that "we've got a problem."

The plaintiff called Karen Laugel, their pediatrician, who was in her office in Bridgeport. The plaintiff and Norman took the child in the plaintiff's car to Laugel's office. After examining the child, Laugel stated that "it looks like a broken leg." Feeling that the child's injury was "very worrisome for the possibility of abuse" and that the child's injury could not "be explained by falling out of the bed," Laugel instructed the plaintiff and Norman to bring the child to Bridgeport Hospital where the child could be treated for his injury and where an investigation would be initiated for child abuse. Laugel also told the plaintiff and Norman that she would meet them at the hospital shortly.

The plaintiff and Norman then took the child to the University of Connecticut Health Center, John Dempsey Hospital (Dempsey Hospital), where the child was admitted on November 20, 1991. After approximately two hours at the hospital, Norman told the plaintiff that he had to go home and feed the animals and left the hospital. After remaining at home for approximately two hours, Norman then drove the plaintiff's car to Stratford, where he checked into a Days Inn at about 8:30 p.m. The following day, November 21, Norman drove around New York City and returned to the Days Inn in Stratford for the evening. On November 22, Norman drove to the Boston area and checked into a motel

in Devon, Massachusetts. On November 23, three days after he had left the hospital, Norman returned to Dempsey Hospital. The doctors at Dempsey Hospital did not conclude that the child had been abused and released the child to the plaintiff on November 25. The child's discharge diagnosis stated that he had suffered a fractured leg.[5]

At the request of Laugel, the department of children and family services (DCF) conducted an investigation for abuse. After meeting with the child, the plaintiff, Norman, and several doctors at Dempsey Hospital, DCF concluded that the origin of the child's injury was unknown and that abuse could not be confirmed.

On January 3, 1992, Radin filed a motion for third party intervention pursuant to General Statutes § 46b-57,[6] asserting that she was the child's maternal grand-

---

[5] The relevant part of the child's discharge diagnosis from Dempsey Hospital, dated November 25, 1991, provides as follows: "Physical Examination: The physical exam on admission was significant for dry, cracked lips, bruises under the left eye and on the left hand dorsum about 5 x 5 cm in size, swollen right fourth digit with decreased flexion, left knee warm with decreased range of motion, left medial thigh with abrasion 5 cm above the knee, and bruising of the lateral aspect of the left thigh.

"A bone scan showed recent fracture of the left proximal tibia in the area of the growth plate. This fracture is also noted on x-ray. The bone scan also showed increased uptake in the distal ulna and in the fourth digit of the right hand. The left leg was splinted by Orthopaedics, and the patient was kept on bedrest."

[6] General Statutes § 46b-57 provides: "In any controversy before the superior court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 51-348a, if there is any minor child of either or both parties, the court if it has jurisdiction under the provisions of [section 46b-90 et seq.], may allow any interested third party or parties to intervene upon motion. The court may award full or partial custody, care, education and visitation rights of such child to any such third party upon such conditions and limitations as it deems equitable. Before allowing any intervention, the court may appoint counsel for the child or children pursuant to the provisions of section 46b-54. In making any order under this section the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference."

mother. On that same day, the trial court granted the motion and issued the following oral order regarding the custody of the child: "I'm going to say that this was the attorneys agreement. That there would be joint legal custody in the mother and the maternal grandmother with primary physical residence with the maternal grandmother." After that order, the custody battle became increasingly bitter and was marked by disputes between the plaintiff and the intervenor concerning visitation rights. Almost three years after the initiation of the underlying matter, and over two years after the date of the child's injury, the trial court rendered judgment, granting sole physical and legal custody of the child to the intervenor.

In its accompanying memorandum of decision, the trial court made the following finding: "The court finds as a fact that [the child's] leg was broken by [Norman], that [Norman] told [the plaintiff] when she came home what he had done and they both decided to tell the story that [the child's] leg was broken while [he] was alone in the bedroom in bed. When they told [Laugel] they did not know what happened to [the child], [Laugel] told them that she felt there was some abuse involved and that an investigation would be made for child abuse. They did not follow the doctor's order to go to Bridgeport Hospital but went eventually to John Dempsey Hospital in Farmington. [Norman] left that hospital as soon as he could and testified that he wanted to get away, that he did not know what was going to happen to him. Under these circumstances, it is clear that it would not be in the best interest of [the child] for him to be given into [the plaintiff's] custody with [Norman] there, knowing that he got away with breaking [the child's] leg as the court has found and with the opportunity to abuse [the child] further. *The court cannot conceive of a situation more detrimental to [the child] than to permit [the plaintiff] to have custody of*

*[the child] now.* Under the above circumstances, [the plaintiff] sided with [Norman] against [the child]. She should not be given the opportunity to do that again." (Emphasis added.)

Upon rendering judgment awarding sole physical and legal custody of the child to the intervenor, the trial court also ordered that the plaintiff shall have rights of "reasonable visitation" with the child and specifically ordered that the plaintiff "shall have visitation on Saturdays from 2:30 p.m. to 12:00 p.m. on Sundays, and one weekday afternoon per week." On April 6, 1994, the plaintiff filed a motion for contempt and order, claiming that the intervenor had wilfully failed to comply with the court's order of visitation. The intervenor then filed a motion for modification on May 26, 1994, requesting the court to terminate the plaintiff's right to overnight visitation. The intervenor's motion for modification also sought a court order preventing the plaintiff from conducting visitation at the plaintiff's residence and from conducting visitation when Norman is present. After conducting hearings, the trial court issued a second memorandum of decision on August 1, 1994, in which it denied the intervenor's motion for modification. The trial court did not grant the plaintiff's motion for contempt, and issued an order permitting the plaintiff to have the child for overnight visitation each weekend and for visitation one afternoon each week.

On appeal, the plaintiff claims the trial court (1) improperly concluded that the intervenor should be awarded custody of the child and that it would be detrimental to him to be in the custody of the plaintiff because the court misconstrued § 46b-56b, and made factual findings not supported by the evidence, (2) failed to issue orders to assist the family in eventual reunification and improperly allowed the attorney for the minor child to argue against the recommendation of the child's guardian ad litem, and (3) improperly

granted temporary custody of the minor child to the intervening nonparent. We affirm the judgment of the trial court.

I

We note initially that "[t]he factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 40–41, 623 A.2d 1134 (1993).

The plaintiff claims that the trial court improperly concluded that it would be detrimental for the child to be in the custody of his mother. The presumption in favor of a parent over a nonparent mandated by § 46b-56b "may be rebutted by showing that it would be *detrimental* to the child to permit the parent to have custody." (Emphasis added.) The trial court found as a fact that the child's leg was broken by Norman, that the plaintiff knew that Norman broke the child's leg, and that Norman was a part of the plaintiff's household.[7] As a result of those findings, the trial court concluded that it could not conceive of a situation more detrimental to the child than to permit the plaintiff to have custody and, as a result of that conclusion, awarded legal and physical custody of the child to the intervenor.

Our determination as to whether the trial court misconstrued or improperly applied § 46b-56b to the facts of this case rests on two factors. First, we review the

[7] The plaintiff and Norman have a child born May 20, 1993, and the three live together.

trial court's findings to ensure that the findings are based on reliable and sufficient evidence. If we conclude that the findings are based on reliable and sufficient evidence, we must then determine whether those findings are sufficient to rebut the presumption that it would be in the child's best interest to be in the custody of his mother.

From our review of the record, we conclude that the trial court's findings are supported by the evidence. The trial court's most critical findings are that Norman broke the child's leg and that the plaintiff sided with Norman against the child.[8] Presumably, the latter finding arises from the subsidiary finding that the plaintiff knew that Norman broke her child's leg and that she continued to live with Norman.

In its memorandum of decision, the trial court further noted that both the plaintiff and Norman failed to follow Laugel's instructions to take the child to Bridgeport Hospital for treatment and instead drove an extra hour to Dempsey Hospital in Farmington. The trial court could reasonably have found that fact to be especially relevant in light of Laugel's testimony that she had given the plaintiff an admissions note allowing the child to be admitted directly to pediatrics without having to wait in the emergency room. Laugel also testified that she felt the child's fractured leg was inconsistent with the claim that he had twisted his leg on the waterbed.

[8] Pursuant to Practice Book § 4051, the plaintiff filed a motion for articulation seeking the trial court to further articulate the factual basis for the "six instances of trauma that the court found the child sustained between April 8, 1991 and November 19, 1991" and "[w]hich of these instances does the court find were the result of abuse by [Norman]." The plaintiff also sought articulation as to "[w]hat evidence supports the conclusion that [the plaintiff] colluded with [Norman] regarding the broken leg incident of November 19, 1991." The trial court response was that "[t]he only one of these instances the court found was the result of abuse by [Norman] was the one on November 19, 1991." The trial court also responded that "[t]he court considered the fact the plaintiff sided with [Norman] against [the child] on the issue of the broken leg."

The trial court also took note of Norman's questionable absence from the hospital and the area for nearly three days and the fact that Norman did not telephone the plaintiff to tell her where he was during this period. Norman's reason for his absence was that "he wanted to be away, to think about everything that was going to happen" to him. Further, the trial court considered Norman's nervous demeanor while giving testimony. In light of the evidence presented and the reasonable inferences that could have been drawn therefrom, the record contains sufficient evidence to support the court's findings.

We must next determine whether the trial court's findings were sufficient to rebut the presumption that it would be in the child's best interest to be in the custody of a parent. The trial court correctly recognized that § 46b-56b mandates a presumption in favor of a parent over a nonparent, and permits that presumption to be rebutted only by a showing that it would be detrimental to the child for the parent to have custody.

A rebuttable presumption is equivalent to prima facie proof of a fact and can be rebutted only by the opposing party's production of sufficient and persuasive contradictory evidence that disproves the fact that is the subject of the presumption. *Anderson* v. *Litchfield*, 4 Conn. App. 24, 28, 492 A.2d 210 (1985). A presumption requires that a particular fact be deemed true until such time as the proponent of the invalidity of the fact has, by the particular quantum of proof required by the case, shown by sufficient contradictory evidence, that the presumption has been rebutted. Id. The failure of a trial court to discuss a presumption or the standard of proof is not sufficient to reverse a finding that a presumption has been rebutted. Id., 29–30.

The powerful language used by the trial court in finding that it could not "conceive of a situation more detri-

mental to [the child than] to permit [the plaintiff] to have custody of the child," indicates that the trial court determined that the statutory presumption in favor of a parental custody had been rebutted in this case. We are not persuaded by the plaintiff's arguments that the trial court improperly concluded that the presumption was rebutted. The trial court properly applied § 46b-56b in determining, by a fair preponderance of the evidence, that it would be to the child's detriment if the court were to permit the plaintiff to have custody in light of the court's findings of fact that Norman had broken the child's leg, that the plaintiff had sided with Norman over that incident of abuse and that Norman, nevertheless, remained a member of the plaintiff's household.

## II

## A

The plaintiff's second claim is that the trial court failed to issue orders to assist a family in eventual reunification. The plaintiff's assertion that a trial court is required to issue orders to assist the family in eventual reunification is premised on the notion that a dissolution action, where custody of a minor child is at issue, is the equivalent of an action case involving termination of parental rights brought pursuant to General Statutes §§ 45a-706 through 45a-765.[9] We disagree with that premise. A termination of parental rights is defined in General Statutes § 45a-707 (g) as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . ."

---

[9] General Statutes § 45a-717 (h) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights . . . the court shall consider . . . (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent . . . ."

In the present case, the rights of the plaintiff as the child's mother were not permanently terminated. Unlike cases involving the termination of parental rights, the court's order did *not* require the complete severance of the legal relationship, with all its rights and responsibilities, between the child and his parent. The trial court ordered that the plaintiff shall have the right to consult with the intervenor on any and all matters concerning the child's health and well-being. Furthermore, the trial court ordered visitation allowing the plaintiff to have the child for overnight visitation each weekend and for one afternoon each week. We conclude that there is no authority for the proposition that a trial court is required to issue orders designed eventually to return a child to the custody of a natural parent in the context of an action for dissolution of marriage and §§ 46b-56b and 46b-57. The trial court, however, does have continuing jurisdiction to issue further future orders in the event a motion for modification of custody is subsequently made and the circumstances merit any modification of its existing orders. General Statutes § 46b-56.

B

The plaintiff also claims that the trial court abused its discretion by allowing the attorney for the child to argue against the recommendation of the child's guardian ad litem. The attorney for the child and the guardian ad litem had divergent views as to whether the child's mother or grandmother should have custody. Both the attorney for the child and the guardian ad litem were appointed by the court. The attorney for the child was appointed on a motion by the defendant, and, subsequently, the guardian ad litem was appointed on a motion by the plaintiff. The former believed that custody should be with the grandmother, and the latter believed that custody should be with the plaintiff.

The guardian ad litem testified, as a witness for the plaintiff, that, on the bases of the 300 hours that she had worked on this case and her numerous observations of the child with his mother, she did not "see any detriment at all to [the child] if he would return to his mother." The trial court, over objection, permitted the attorney for the child to cross-examine the guardian ad litem and to give a recommendation to the court that the child should remain with the intervenor. The plaintiff argues that the conspicuous lack of participation by the attorney for the child evidenced by her absence from some court proceedings and by her limited role in the case after the appointment of the guardian ad litem, should have precluded the trial court from permitting the attorney for the child to give a recommendation that was purportedly based on the child's best interest. The plaintiff claims that this alleged error was not harmless because it served to nullify the testimony of the guardian ad litem, thereby causing prejudice to the plaintiff.[10]

The guardian ad litem challenges whether the attorney for the minor child had the authority to make a recommendation as to the child's best interests, when such a recommendation was in direct conflict with the recommendation of the child's guardian ad litem. In her brief, the guardian ad litem claims that the trial court's decision to permit the attorney for the minor child to make a recommendation, purportedly based upon the child's best interest, "was so egregious as to deny a fair trial on the question of custody."

General Statutes § 46b-54 (a)[11] permits the trial court to appoint an attorney to represent a minor child during

[10] We note that the plaintiff does not have standing to raise a claim on behalf of her child. *Taft v. Bettcher*, 35 Conn. App. 421, 646 A.2d 875 (1994). In the present case, however, the plaintiff has standing due to her claim that the trial court's alleged error prejudiced her own case.

[11] General Statutes § 46b-54 provides: "Counsel for minor children. Duties. (a) The court may appoint counsel for any minor child or children of either

a dissolution proceeding if "the court deems it to be in the best interests of the child or children" "The purpose of appointing counsel for a minor child in a dissolution action is to ensure independent representation of the child's interest and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation. *Schaffer* v. *Schaffer*, 187 Conn. 224, 224 n.1, 445 A.2d 589 (1982)." (Internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 791, 621 A.2d 267 (1993).

The obligations and limitations of the role of counsel for children in custody cases have not yet been definitively determined by the appellate courts of this state. Furthermore, although one appellate case has recognized that there is a potential for conflict between the roles of guardians ad litem and counsel for children when both are appointed by the court, the precise issue of this case has not been resolved. *Newman* v. *Newman*, 235 Conn. 82, 96, 663 A.2d 980 (1995).

In *Knock*, the role of counsel for a child in custody cases was not delineated because the counsel was

or both parties at any time after the return day of a complaint under section 46b-45, if the court deems it to be in the best interests of the child or children. The court may appoint counsel on its own motion, or at the request of either of the parties or of the legal guardian of any child or at the request of any child who is of sufficient age and capable of making an intelligent request.

"(b) Counsel for the child or children may also be appointed on the motion of the court or on the request of any person enumerated in subsection (a) of this section in any case before the court when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy, provided the court may make any order regarding a matter in controversy prior to the appointment of counsel where it finds immediate action necessary in the best interests of any child.

"(c) Counsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child."

unable to demonstrate any prejudice arising from the conflict between the trial court's belief that the counsel should only minimally participate in the trial and the counsel's belief that she should participate by cross-examining witnesses, making evidentiary objections, and otherwise fully participating in the trial, including the preparation and submission of oral and written arguments. Because the counsel was able to participate fully in the trial, "[t]he trial court's view of counsel's role . . . did not impair her ability to represent her client in an appropriate manner." *Knock* v. *Knock*, supra, 224 Conn. 792. Although *Knock* did not resolve the parameters of a minor child's counsel's role in a dissolution action, and did not involve both a guardian ad litem and counsel for a child, this statement of the court implies that counsel acted appropriately.

*Knock* establishes that any testimony that is relevant to assess what is in the best interest of a child in custody cases may be heard by a trial court without an abuse of discretion occurring. The trial court in *Knock* heard relevant testimony relating to the issue of custody from four witnesses, a court-appointed evaluator, a family relations counselor, a licensed psychologist, and an expert on the subject of battered women's syndrome. Two witnesses opined that custody should be with the father, one witness opined that custody should be with the mother, and the fourth witness opined that the mother manifested battered woman's syndrome. Id., 779. The trial court did not rely solely on any one person's testimony and, therefore, did not abuse its discretion in allowing and considering testimony relevant to its determination of whether the best interests of the child required custody to be with the mother or the father. Unlike the present case, there was no claim that the child's counsel should not have been heard on the issue of custody, nor was there a conflict between a counsel and a guardian ad litem. In the present case,

the counsel was not a witness and gave no testimony, although the guardian ad litem testified as a witness for the plaintiff and argued that the plaintiff should have custody.

In *Newman* v. *Newman,* supra, 235 Conn. 82, the issue to be resolved by the court was whether an appeal should be dismissed if counsel appointed pursuant to § 46b-54 takes the appeal rather than a guardian ad litem or counsel, as the child's next friend. In the course of concluding that such counsel could pursue an appeal without the appointment of a guardian ad litem if the trial court determines that it is in the best interests of the child to appeal, the Supreme Court shed some light on whether such counsel may be heard on the issue of custody, and the distinction between the roles of counsel and guardian ad litem.

A guardian ad litem is usually appointed by a court to bring a civil action on behalf of a child. Id., 95. The counsel appointed pursuant to statute in dissolution actions and recognized by judicial precedent is an indication that "the law deems it sufficient to protect [the interests of children] by way of an appointment of an attorney, rather than also requiring a simultaneous appointment of a guardian ad litem or the naming of a next friend . . . ." Id., 97. The role of the counsel is an advocate for the child; id., 102; and that counsel shall be heard on all matters pertaining to the interests of the child so long as the court deems the representation to be in the best interests of the child. Id., 99–100, citing General Statutes § 46b-54 (c).

In the present case, although there was a conflict of opinion between the attorney for the child and the guardian ad litem, the claimed abuse of discretion does not arise because of a conflict of roles, but because of a conflict in the resolution of whether the mother or grandmother should have custody of the child. We do

not need, therefore, to determine or examine the parameters of the roles of the two court-appointed persons,[12] but rather, must decide whether the trial court should have allowed the counsel to offer her opinion as to custody when it differed from that of the guardian ad litem.

Pursuant to § 46b-54 (c), the attorney for the minor child "shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, as long as the court deems such representation to be in the best interests of the child." The trial court, therefore, was obligated to hear the position of the attorney for the child as long as the court deemed that opinion to be relevant to the best interests of the child.[13] An opinion as to who should be given custody of a minor child, as determined by the "best interests of a child," is not strictly a legal conclusion, but it is a conclusion that counsel for a child may submit to the court, as a recommendation, for the court's consideration, in the proper circumstances. There is no indication in the record that the counsel for the child had no basis at all for her recommendation or that the trial court relied solely on it. There was relevant testimony, including that of the guardian ad litem, as well as the opinion of the child's counsel, which the trial court had before it, in determining who should have custody of the child. We conclude that the trial court correctly permitted the attorney for

[12] Nothing in § 46b-54 conditions the court's power to appoint an attorney for a minor child on the presence or appointment of a guardian ad litem and there is nothing in the statute to suggest that for purposes of an ongoing dissolution trial, a guardian ad litem must, or should, be appointed.

[13] We note that diverse standards are set out in the American Bar Association's Model Rules of Professional Conduct, rule 1.14, and the American Academy of Matrimonial Lawyers, Standards for Attorneys and Guardians ad Litem in Custody or Visitation Proceedings, standard 2.7 (prohibits counsel for "impaired child" from advocating or recommending particular result). It may be that these standards conflict with General Statutes § 46b-54 (c).

the child to offer her recommendation concerning the custody of the child. The weight it gave to that recommendation became one more ingredient in the ultimate issue of custody that the trial court had to decide.

### III

The plaintiff's final claim is that the trial court improperly granted temporary custody to the intervening nonparent. Any issues involving the order of temporary custody,[14] however, are moot because that order merged with the trial court's final dissolution decree granting sole legal and physical custody of the child to the intervenor. See *Hall* v. *Hall,* 186 Conn. 118, 439 A.2d 447 (1982). In such a case "[t]he order of temporary custody is therefore academic. Appellate courts will not consider academic questions, particularly where no appropriate relief may be afforded. *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979)." *In re Carl O.,* 10 Conn. App. 428, 434, 523 A.2d 1339, cert. denied, 204 Conn. 802, 525 A.2d 964 (1987).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] At the time the trial court issued its order of temporary custody, *Madigan* v. *Madigan,* 224 Conn. 749, 757, 620 A.2d 1276 (1993), holding that temporary orders for custody are immediately appealable, had not yet been decided.