[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION OF DECISION RE: DEFENDANT'S MOTION FOR ARTICULATION
This memorandum of decision of decision responds to the defendant's Motion for Articulation dated September 24, 1996.
1. State what the Court found to be the Plaintiff's earning CT Page 1240 capacity.
The response to this request for articulation is found at pages 7-8 of the memorandum of decision. The court found that the plaintiff is currently working at capacity, within the meaning of the guidelines, earning $463 gross wages weekly. The court noted that no evidence was presented by the defendant to controvert the assumption that the plaintiff is employed at capacity, within the meaning of the guidelines. The court also considered rental income reported by the plaintiff upon her financial affidavit, as a part of the process of calculating the parties' financial obligations toward the support of their child.
2. State whether the Court found that the Plaintiff had an obligation toward child support based on her earning capacity.
The response to this request for articulation is found at page 30 of the memorandum of decision, where it is established that the plaintiff is obligated to make a weekly contribution of $88 to her daughter's support.
3. State whether the Court found that the Plaintiff voluntarily decreased her income from her previous employer.
The response to this request for articulation is found at page 7 of the memorandum of decision. The defendant failed to provide sufficient evidence from which the court could conclude that the plaintiff voluntarily decreased her income from her previous employer, and therefore the court did not reach this conclusion. The court credited the evidence that in the plaintiff's previous employment, she earned more than that compensation provided by her current occupation.
4. In arriving at Defendant's net child support annual income, state ate whether the Court deducted Social Security taxes of 12.4%, State of Connecticut income taxes and Medicare taxes.
At pages 10 and 28 of the memorandum of decision, the court noted that the defendant works and lives in the state of Florida. State of Connecticut income taxes would be inapplicable to the defendant's earning capacity for child support purposes. There was no reliable evidence presented from which the court could determine the rate of income tax, if any, the defendant is required to pay to the state of Florida. The court credited the CT Page 1241 defendant's testimony that he is currently an employee of an eponymous life insurance agency, albeit his testimony was not credible on most other financial issues. As an employee, the court assumed that the defendant would be entitled to withholding from his attributable earnings of an amount equal to his personal social security and Medicare obligations, not the full (self-employment tax) share of social security and Medicare obligations.
5. If the court did these calculations, state the amount the Court found to be Defendant's annual Social Security tax obligation.
See response to paragraph 4, above. The court did not retain its original calculations.
6. If the Court did these calculations, state the amount the Court found to be the Defendant's annual State of Connecticut income tax obligation.
See response to Paragraph 4, above.
7. If the Court did these calculations, state the amount the Court found to be the Defendant's annual Medicare tax obligation.
See response to Paragraph 4, above. The court did not retain its original calculations.
8. State the factual basis for the Court's finding as to the Defendant's earning capacity of $63,000.
The response to this request for articulation is found at pages 11-12 and 16 of the memorandum of decision. The defendant claimed that in 1994 his gross receipts from self employment were $44,400 and that he had received family contributions in the amount of $16,000. Based on his income as reportedly earned during the first month of 1995, the defendant's testimony supports the inference that he would earn $84,000 during that calendar year. The defendant's otherwise inconsistent testimony created a need for the court to reconcile conflicting statements of the amount and value of his earned income and regularly received gift income. Based on the totality of the testimony and documentary evidence submitted, the court concluded that a fair and equitable assessment of the defendant's earning capacity, including his capacity to collect regular and consistent gift CT Page 1242 income, was $63,000 per year.
9. State the factual basis for the Court's use of the twenty-eight (28%) percent tax rate in arriving at the Defendant's net child support annual income of $38,160.
The response to this request for articulation is found at pages 11-12 and 16 of the memorandum of decision. The federal income tax rate for a single individual with that level of income would be levied at an approximate rate of 28%, allowing less net income available for child support purposes than that amount demonstrated through use of the defendant's federal income tax withholding as represented on his financial affidavit.
10. State what the court found to be the defendant's income from all sources for 1994 and for 1995, respectively.
The response to this request for articulation is found at pages 5 n. 5, 10-12, 13, 14 and 16 of the memorandum of decision, through the court's discussion of the defendant's complex income stream and financial endeavors. The court was deprived of the ability to make any specific aggregate finding of the defendant's actual income during these years due to the defendant's acknowledged erratic income level and incomplete reporting practices, the inconsistencies between his financial affidavits and his federal income tax returns, his accounting system which nearly obfuscated his actual earning picture, the questionable quality and nature of the evidence concerning his earnings, and the court's resulting inability to credit the defendant's testimony as to many of these issues. It should again be noted that the defendant could not respond to inquiry concerning exactly how much he had earned in 1994 from "other sources". The defendant made deposits in excess of $73,000 during 1994 but could not adequately explain the sources of these funds. The defendant claimed that his gross receipts from self-employment were $44,000. The defendant received a total of $6,000 in gifts and a $10,000 bequest in 1994. The defendant admitted the existence of a savings account opened in 1994 which is not disclosed on his financial affidavits from October 24, 1994 or November 29, 1995. The defendant's testimony supports the conclusion that he would earn gross income of $84,000 in 1995 and subsequent years..
Taken together with his inconsistent and unreliable testimony, "the complexities of the defendant's business CT Page 1243 interests were such that it was `difficult to accurately determine the defendant's true financial status. . . .'" Howat v.Howat, 1 Conn. App. 400, 401 (1984). Accordingly, in determining the defendant's earnings and his earning capacity, the court considered the totality of the circumstances as presented by the evidence. Id.
11. State whether the court deducted all of the defendant's Schedule C expenses as listed on his 1994 IRS return to establish his gross income from his business.
The response to this request for articulation is found at page 14 and 16 of the memorandum of decision. Due to the vagaries and inconsistencies among the defendant's financial affidavits and evidence concerning his financial status, the court declined the defendant's entreaty to recognize that his income tax returns accurately reflect his income. The court concluded that his self employment warrants expenses of $10,000. In determining the defendant's earnings and his earning capacity, the court considered the totality of the circumstances as presented by the evidence. See Howat v. Howat, supra, 1 Conn. App. 401.
12. State the amount of gifts the court found to have been received by the defendant from his family in the calendar year of 1995.
The response to this request for articulation is found at page 15 of the memorandum of decision. The court noted that the defendant received $6,000 in gifts in 1994 and admitted that he regularly receives gifts from his mother. The court acknowledged that at least $6,000 in family gift income was received by the defendant in 1995, given the gross deposits noted in relevant bank accounts. The court inferred from this evidence that the amount of gifts would at least remain equal for subsequent years.
13. State whether the court found that defendant had received regular gifts of money from his family prior to 1995.
See response to paragraph 12, above.
14. State whether the court found that gifts the defendant received from his family during the calendar year 1995 would continue in the future.
The response to this request for articulation is found at CT Page 1244 page 15 of the memorandum of decision. See also Paragraph 12, above. Based upon the defendant's testimony and admission that he regularly received gifts from his family, and in the absence of any reliable evidence from which the court could conclude that these gifts were likely to terminate, the court applied the principles of Rubin v. Rubin, 204 Conn. 224 (1987) to this case.
15. If the court found that the gifts defendant received would continue in the future, state the factual basis of this finding.
See response to Paragraphs 12 and 14, above.
16. State the amount of said gifts the Court included, if any, in establishing the defendant's net income available for child support.
See response to Paragraphs 12 and 14, above.
17. State whether the court found credible the defendant's testimony regarding the travel expenses needed to exercise visitation.
The response to this request for articulation is found at pages 28-29 of the memorandum of decision. The court received no reliable evidence from which it could conclude that the defendant regularly attends six scheduled visits with his daughter in Connecticut. Although the defendant is allowed to participate in such visits pursuant to court order, no specific number of visits has been scheduled. The court found the defendant's expressed intention to visit his daughter in Connecticut to be speculative and unpersuasive. He has apparently considered no mode of transportation other than air travel. There was no reliable evidence from which the court could conclude that the defendant even intends to arrange for visitation with his child, except for purposes of inviting the assignment of a deviation from the child support guidelines. In view of these circumstances, the court declined the opportunity to find that, at this time, the defendant's transportation costs are continuing or that they warrant a deviation from the guidelines support allotment.
18. If the court did not find the defendant's testimony on this issue credible, state the factual basis for the court's conclusion that the defendant's testimony was not credible. CT Page 1245
See response to paragraph 17, above.
19. If the Court found the Defendant's testimony credible, state whether the Court found that a deviation downwards from the child support guidelines was appropriate given the Defendant's costs associated with travel for visitation.
The response to this request for articulation is found at page 29 of the memorandum of decision. The court anticipated the possibility that the defendant could remove his plans for visitation from the realm of speculation, and that he could, in the future, establish specific, substantial and continuing transportation costs dedicated to visitation with his daughter in Connecticut. If and when such circumstances arise, the court noted that the defendant may submit a motion for modification to the court to request review of this aspect of the child support orders. See Rubin v. Rubin, supra, 204 Conn. 224.
20. State the amount, if any, that the Court calculated any such deviation to be.
The response to this request for articulation, ostensibly reflecting inquiry concerning any deviation related to travel expenses, is found at page 29 of the memorandum of decision See also, response to Paragraph 19, above. The court made no such determination because it did not find that the defendant's transportation costs were continuing so as to warrant a deviation from the guidelines.
21. State whether the child's religious tutoring expenses were part of the extraordinary and continuing education expenses the Court identified as a reason to deviate from the child support guidelines.
The response to this request for articulation is found at pages 9 and 28 of the memorandum of decision. The court has noted that, consistent with the original decree, the child's religious tutoring constituted part of the education expenses. The court finds that Leah should be permitted, at a minimum, to continue receiving her rabbinical tutoring, as identification with her religious and cultural heritage is of significant importance to this child. The court has found that Leah's extraordinary, continuing and substantial education expenses warrant a deviation from the guidelines, as contemplated by the parties at the time the original child support orders were entered in Texas. CT Page 1246
22. State the facts upon which the Court relied in deciding that the expenses for the child's religious tutoring were essential.
The response to this request for articulation is found at page 8 and 9 n. 7 of the memorandum of decision. The court found persuasive the plaintiff's testimony that Leah's interests are best served through an educational program that offers both a religious and secular curriculum. Her testimony was consistent with the statements made on the child's behalf by her attorney, Thomas Fiorentino. See Schult v. Schult, 40 Conn. App. 675, 689
(1996). See also Knock v. Knock, 224 Conn. 776, 790-93 (1993). The court based its decision upon the testimony of the plaintiff and upon representations made by Atty. Fiorentino. Pursuant to the express agreement of the parties, the court had also reviewed a written report prepared by Dr. James Black, a health care provider who had met with the child. See Court Order of December 20, 1995. The testimony of the plaintiff and the statements of Atty. Fiorentino were consistent with the recommendations from Dr. James Black relating to the issue of religious education for this child.
23. State upon which section or sections of Connecticut General Statutes § 46b-215(a)-3 (b), as enumerated in the Child Support and Arrearage Guidelines effective June 1, 1994, the Court relied in determining that extraordinary educational expenses warranted a deviation upwards of $48.00 per week in Defendant's child support obligation.
The response to this request for articulation is found at page 28 of the memorandum of decision, where the court cites § 46b-215a-3 (b)(2)(A).
24. State whether the Court determined that the costs of the child's religious tutoring alone warranted a deviation from the child support guidelines.
The response to this request for articulation is found at pages 8, 9 and 30 of the memorandum of decision. See also response to Paragraph 22, above. The court found that, at a minimum, religious tutoring should be provided to this child. The court has identified Leah's extraordinary and continuing education expenses as the basis for its deviation from the child support guidelines. CT Page 1247
25. State what other extraordinary and continuing expenses other than the child's tuition that warranted a deviation from the child support guidelines.
The response to this request for articulation is found at pages 9 and 10 of the memorandum of decision. See also responses to Paragraphs 22 and 24, above. Although the deviation utilized by the court clearly contemplates educational expenses incurred on Leah's behalf, whether through tutoring or through private full-time schooling, no specific financial accommodation was provided for the costs of the child's participation in social activities sponsored by Jewish organizations, such as camp and the local community center.
26. If the Court did not base its decisions to obligate the Defendant to pay a portion of the child's extraordinary educational expenses on the deviation criteria found in said guidelines, state the legal basis for the Court's decision.
The response to this request for articulation is found at pages 28 and 30 of the memorandum of decision. See also response to Paragraphs 22, 24 and 25, above. 28. The court used the deviation criteria specified by § 46b-215a-3 (b)(2)(A) of the guidelines, having found that Leah's extraordinary, continuing and substantial educational expenses warrant a deviation from the support regulations.
27. If the Court did not base its decisions to obligate the Defendant to pay a portion of extraordinary educational expenses on the deviation criteria found in said guidelines, state the factual basis for the Court's decision.
See response to Paragraph 26, above.
28. State whether the absence of extraordinary educational expenses would warrant a modification of the child support deviation amount by a reduction of $48.00 per week.
The court finds that it would be inappropriate and speculative to reply to this inquiry in advance of a motion for modification and the presentation of evidence specifically relating to such circumstances.
29. State whether the court relied on information in Dr. CT Page 1248 Black's report in reaching its decision to order Defendant to pay for a portion of the child's religious training.
The response to this request for articulation is found at page 8 and 9 of the memorandum of decision, and in the response to Paragraph 22, above. The court based its decision upon the testimony of the plaintiff and statements made by Atty. Fiorentino, counsel for the minor child, although it had reviewed information provided from Dr. Black, at the express request of the parties. See Court Order of December 20, 1995.
30. State whether the Court found credible the Defendant's testimony that he had overpaid child support in the amount of $554.76.
The response to this request for articulation is found at page 33 of the memorandum of decision. The court did not find credible the Defendant's testimony that he had overpaid child support in the amount of $554.76.
BY THE COURT,
N. Rubinow, J.