DONALD D. BOWERS *v.* FLORENCE IRENE BOWERS
(AC 20420)

Lavery, C. J., and Foti and O'Connell, Js.

Submitted on briefs September 15—officially released December 12, 2000

*Brian M. Silver* filed a brief for the appellant (plaintiff).

*Robert H. Weinstein* filed a brief for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Donald D. Bowers, appeals from the postjudgment order of the trial court finding him in contempt of orders that directed him to make certain payments of child support and counsel fees to the defendant, Florence Irene Bowers, and awarding further counsel fees to her. The plaintiff claims that the

court improperly (1) concluded that he wilfully violated an order of the court, (2) entered an interim order and (3) awarded attorney's fees. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The parties' marriage of approximately twenty years was dissolved on April 15, 1988. Thereafter, the parties presented a series of motions addressing child support and other financial orders. On June 3, 1993, the court modified previous orders and, as relevant to this appeal, ordered payments by the plaintiff against the child support arrearage[1] suspended "until [he] receives unemployment compensation, disability insurance or finds a new job. In the event of any of the above activities, the plaintiff is to notify the court of the amount of income and to provide an affidavit supporting his income/job."

During the hearing on the defendant's motion for contempt relating to the plaintiff's alleged failure to comply with the court's June 3, 1993 order, the court entered an interim order dated March 26, 1996, ordering the plaintiff to seek employment and to remain employed. In a memorandum of decision filed on December 21, 1999, the court concluded that the plaintiff had failed to use an available inheritance to pay the amounts due to the defendant and had improperly diverted those funds. The court found that because the plaintiff had the ability to comply with the June 3, 1993 order, but chose not to do so, he was in contempt of that order. The court further found, in concluding as it did, that the plaintiff's mother had died on July 3, 1994, and that he subsequently was notified that he would receive a distribution from her estate of at least $18,500. The plaintiff, rather than accepting that amount, filed

[1] The child support arrearage totaled $11,844 as of that date, plus attorney's fees of $5055 and costs of $919.93.

a formal notification of his intention to disclaim the distribution. The plaintiff claimed that he had been offered a loan from William Bowers, his brother and coexecutor of their mother's estate. The alleged loan had been made in April, 1994, subsequent to the entry of the court's June 3, 1993 order. The plaintiff's disclaimer was given in exchange for his brother's consideration of forgiving a portion of the loan.

The court also found that the plaintiff was in contempt for his noncompliance with the March 26, 1996 interim order by failing to make efforts to secure employment as ordered by the court. The court awarded attorney's fees to the defendant in the amount of $4550 for the two contempt motions on which she prevailed.[2]

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Internal quotation marks omitted.) *Werblood* v. *Birnbach*, 41 Conn. App. 728, 730, 678 A.2d 1 (1996); see also *Karen* v. *Parciak-Karen*, 40 Conn. App. 697, 703, 673 A.2d 581 (1996); *Rummel* v. *Rummel*, 33 Conn. App. 214, 220, 635 A.2d 295 (1993); *Graham* v. *Graham*, 25 Conn. App. 41, 47, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991).

"[T]he factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence

---

[2] The court denied the defendant's motion to open the judgment and an additional motion for contempt filed by the defendant.

is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Schult* v. *Schult*, 40 Conn. App. 675, 682, 672 A.2d 959 (1996), aff'd, 241 Conn. 767, 699 A.2d 134 (1997). "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

I

The plaintiff first claims that the court improperly concluded that he had wilfully violated the court's June 3, 1993 order. He argues that the court's order is clear and unambiguous, providing that the order for payment would no longer be suspended upon the occurrence of any one of three specific conditions. The plaintiff further argues that none of the conditions was met because he did not receive unemployment compensation or disability insurance and did not find a new job. Alternatively, the plaintiff argues that even if the order was ambiguous, he could not be found in wilful contempt of the order. He posits that the court abused its discretion by finding a deliberate defiance of a court order that was clearly not justified. We do not agree.

A finding of contempt is a question of fact; see *State* v. *Jackson*, 147 Conn. 167, 170, 158 A.2d 166 (1960); and our standard of review is to determine whether the court abused its discretion in finding that the actions or inactions of the party were in contempt of a court order. *Bunche* v. *Bunche*, 36 Conn. App. 322, 324, 650 A.2d 917 (1994).

The plaintiff argues that, as a matter of law, under the circumstances of this case, he could not be found to have disobeyed an order of the court. He also argues

that if it can be determined that he did not comply with an order of the court, there is no adequate factual basis to find that noncompliance to be wilful. We do not agree.

Where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct, and find support in the facts set out in the court's memorandum of decision. *Burrier* v. *Burrier*, 59 Conn. App. 593, 595, 758 A.2d 373 (2000). The court's conclusions must stand unless they involve the application of some erroneous rule of law material to the case. *Cummings* v. *Tripp*, 204 Conn. 67, 87, 527 A.2d 230 (1987).

A fair reading of the June 3, 1993 order leads us to conclude that the court properly determined that its obvious meaning was that "when the plaintiff has funds available to cover the amount due to the defendant, he should pay her that amount available and should do so with dispatch." We agree with the court's reasoning that a fair reading of the June 3, 1993 order shows an expectation that the plaintiff would make reasonable efforts to find employment and that he would notify the court of any income or job so that, if necessary, a wage execution could issue to secure the amounts due.[3] We rely on the purpose of our support statutes and the public policy related thereto to conclude as we do. See, e.g., *Mulholland* v. *Mulholland*, 31 Conn. App. 214, 224, 624 A.2d 379 (1993), aff'd, 229 Conn. 643, 643 A.2d 246 (1994). The clear implication of the June 3, 1993 order gave the defendant sufficient notice of what was expected of him.

---

[3] The court filed a thorough and well reasoned sixty-nine page memorandum of decision, which addressed a number of issues, including those on appeal. Although one of the defendant's motions sought a finding of contempt on grounds other than the diversion of the available inheritance, neither party raised the issue before the trial court or on appeal. The parties were fully heard by the trial court, and the plaintiff did not seek an articulation. Moreover, the plaintiff did not file a transcript of the hearing.

To constitute contempt, a party's conduct must be wilful. *Ford* v. *Ford,* 52 Conn. App. 522, 529, 727 A.2d 254 (1999). Noncompliance alone will not support a judgment of contempt. *Issler* v. *Issler,* 50 Conn. App. 58, 64, 716 A.2d 938 (1998), rev'd on other grounds, 250 Conn. 226, 737 A.2d 383 (1999). The plaintiff had an available inheritance in the amount of $18,500 with which to comply with the court order, but intentionally and improperly diverted those funds. The court did not abuse its discretion in concluding that the plaintiff wilfully violated an order of the court.

## II

The plaintiff next claims that the court abused its discretion by "modifying" the June 3, 1993 order with its interim order dated March 26, 1996. There is no merit to this claim. It is clear that the interim order was entered in an effort by the court to effectuate the prior order and was not a modification. The plaintiff filed no appeal from the entering of the interim order. Because the interim order was not improperly entered, the court's subsequent action, finding by clear and convincing evidence that the plaintiff "wilfully failed to comply with the interim [order] . . . requiring him to find and maintain employment," was within its discretion, and we conclude that no abuse of that discretion has been demonstrated.

## III

The plaintiff finally claims that the court improperly awarded attorney's fees. He claims that the defendant failed to request such an award and that the court awarded attorney's fees "to punish [the plaintiff] . . . for wilfully violating a court order."

The hearing lasted eleven days. The court awarded $4550 in attorney's fees to the defendant. The award of attorney's fees in contempt proceedings is within the

discretion of the court. *Tatro* v. *Tatro*, 24 Conn. App. 180, 189, 587 A.2d 154 (1991). The court awarded the attorney's fees pursuant to General Statutes § 46b-87, which allows such an award against one found in contempt.[4] The plaintiff has failed to sustain his burden of demonstrating that the court abused its discretion.

The judgment is affirmed.

In this opinion LAVERY, C. J., concurred.

O'CONNELL, J., dissenting. I do not agree that the plaintiff properly was held in contempt for violating the trial court's June 3, 1993 order. That order expressly suspended the plaintiff's obligation to make payments on his child support arrearage until he (1) received unemployment compensation, (2) received disability insurance or (3) found a new job. It is undisputed that none of those events occurred.

I am unable to stretch my imagination to construe the defendant's possible inheritance to be the equivalent of any of the three triggering events.[1] Because the contempt remedy is particularly harsh, it must be founded solely on a clear and expressed direction from the court. *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982). "One cannot be placed in contempt for failure to read the court's mind. . . . Recognizing those basic tenets, most courts, in deciding whether a contempt has occurred, have refused to expand judgments by implication beyond the meaning of their terms. . . .

[4] General Statutes § 46b-87 also allows the court to award a reasonable attorney's fee to a person found not to be in contempt of a court order.

[1] There was no motion before the trial court seeking to have the plaintiff found in contempt as a result of the inheritance from his mother. The court was acting on the defendant's May 16, 1994 motion, which sought a contempt finding on the basis of money the plaintiff allegedly received from a bankruptcy proceeding and an alleged sale of real estate. That motion makes no reference to the inheritance. The court was acting suo moto in finding the plaintiff in contempt on the basis of this inheritance. Because the parties did not raise this issue on appeal, I will not discuss it further.

[W]here parties under a mandatory judgment could be subjected to punishment as contemnors for violating its provisions, such punishment should not rest upon implication or conjecture, but the language declaring such rights should be clear, or imposing burdens specific and unequivocal so that the parties may not be misled thereby." (Citations omitted; internal quotation marks omitted.) Id., 467–68.

The June 3, 1993 order met the clear and express standard so that the plaintiff could govern his conduct accordingly. The plaintiff could not be expected, however, to understand that the three express triggering events would be construed to encompass funds he might receive from any other source. This can be so construed only by implication and conjecture, which are barred when considering a contempt appeal. Id., 468.

I decline to speculate concerning any unexpressed intent of the trial court when it rendered its judgment, nor would I enlarge that judgment beyond its express terms. Likewise, I will not torture the words of the June 3, 1993 order when their meaning is clear. See *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000).

"Although . . . plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment." (Internal quotation marks omitted.) *Wilson* v. *Wilson*, 38 Conn. App. 263, 272, 661 A.2d 621 (1995). Appellate review of a finding of civil contempt "is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which

the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because . . . the findings on which it was based were ambiguous and irreconcilable . . . ." (Internal quotation marks omitted.) Id., 271.

I would reverse the trial court's judgment that the plaintiff was in contempt of the June 3, 1993 order.