STATEWIDE GRIEVANCE COMMITTEE *v.* SAMUEL E. DIXON, JR.
(AC 20322)

Lavery, C. J., and Foti and Zarella, Js.

Argued December 13, 2000—officially released March 27, 2001

*Samuel E. Dixon, Jr.*, pro se, the appellant (defendant).

*Darlene F. Reynolds*, assistant bar counsel, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The defendant attorney, Samuel E. Dixon, Jr., appeals from the judgment rendered by the trial court finding him in violation of the Rules of Professional Conduct and imposing sanctions. This matter

came to the trial court on a presentment by the plaintiff, the statewide grievance committee, alleging that the defendant had violated rules 1.15, 1.5 (c) and (e) of the Rules of Professional Conduct. After a hearing, the court dismissed the alleged violation of rule 1.15 for failure to prove the allegation by clear and convincing evidence,[1] but found the defendant in violation of the Rules of Professional Conduct on the remaining allegations. It ordered a nine month suspension from the practice of law followed by a conditional readmission.

On appeal, the defendant claims that (1) the court improperly found facts in a light most favorable to the plaintiff, (2) he "substantially complied" with rule 1.5 (c) of the Rules of Professional Conduct, (3) he did not violate rule 1.5 (e) of the Rules of Professional Conduct and (4) the court imposed an excessive punishment, effectively including punishment for another grievance case that was on appeal at the time that he filed his brief, which appeal has since been dismissed.[2] We disagree and affirm the judgment of the trial court.

The following facts recited by the court in its memorandum of decision are relevant to our resolution of the issues on appeal. "Sometime in 1995 or prior, [the defendant] represented Mary E. Parsons with respect to an automobile accident involving one Wayne Legere

[1] "[I]n a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence." (Internal quotation marks omitted.) *Silver* v. *Statewide Grievance Committee*, 42 Conn. App. 229, 236, 679 A.2d 392 (1996), appeal dismissed, 242 Conn. 186, 699 A.2d 151 (1997).

[2] The defendant also claims that the present grievance action is a second grievance arising out of the same fact pattern, which amounts to double jeopardy in violation of the state and federal constitutions. The defendant failed to provide evidence in support of that claim to the court. Absent plain error or constitutional error, we are not required to address claims that parties do not distinctly raise at trial. See Practice Book § 60-5; *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Therefore, we do not address this claim on appeal.

(the accident case). Parsons was originally represented in the accident case by attorney James McCann, who was a college friend of hers. Prior to representing Parsons in the accident case, [the defendant] represented Parsons in several matters which were referred to at the hearing [in this matter] as the workers' compensation matter, [an action in federal court] and a probate appeal. In connection with these matters, Parsons signed a written retainer agreement prepared by [the defendant]. . . .

"According to Parsons, [the defendant] convinced her to retain him, rather than McCann, to represent her in the accident case. Both Parsons and [the defendant] testified that there was no written fee agreement with [the defendant] regarding the accident case. Parsons was not aware of any fee sharing arrangement between [the defendant] and McCann. Parsons did understand that [the defendant] was to receive a fee of one-third of the gross settlement in the accident case.

"In August, 1995, [the defendant] effectuated a settlement of the accident case for a gross amount of $20,000. A letter was sent to Parsons detailing the breakdown of the settlement. . . . That letter shows a disbursement to Parsons of $9000, to McCann for file costs only in the amount of $474.20 and to [the defendant] for attorney's fees in the amount of $6,666.66. The letter indicated that the remainder of the gross settlement 'is in escrow to defend against bill for hourly billing submitted by attorney James F. McCann.'

"Eventually, [the defendant] disbursed $3000 plus costs to McCann. . . . Parsons did not consent to this disbursement nor was she aware that [the defendant] was planning to pay that amount to McCann. Rather, [the defendant] told her she would get the balance of the gross settlement when his funds were more liquid. According to Parsons, she first learned that [the defen-

dant] had disbursed the $3000 to McCann in March, 1998."

I

The defendant first claims that the court was not impartial in finding the facts in a light most favorable to the plaintiff. We disagree.

"As a reviewing court, we may not retry the case or pass on the credibility of witnesses. *State* v. *Branham*, 56 Conn. App. 395, 398, 743 A.2d 635, cert. denied, 252 Conn. 937, 747 A.2d 3 (2000). Our review of factual determinations is limited to whether those findings are clearly erroneous. Practice Book § 60-5; *State* v. *Alterisi*, 47 Conn. App. 199, 204, 702 A.2d 651 (1997). We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. *State* v. *McClam*, 44 Conn. App. 198, 208, 689 A.2d 475, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997)." *State* v. *Campbell*, 61 Conn. App. 99, 102, 762 A.2d 12 (2000), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001).

The court, as the finder of fact, found that Parsons' testimony was credible. "The weight to be given to the evidence and to the credibility of witnesses is solely within the determination of the trier of fact." Id., 102–103. Therefore, the court properly performed its fact-finding function, and we appropriately defer to the court's assessment.

II

The defendant next claims that the court improperly concluded that he violated rule 1.5 (c). He claims that he "substantially complied" with rule 1.5 (c) in three of the four cases he handled on behalf of Parsons. He further argues that Parsons refused to sign a proffered retainer agreement regarding the accident case. Addi-

tionally, he claims that he regularly represented Parsons for three years and that an understanding had evolved between them regarding his fee for contingent fee matters. We find no merit to the defendant's claim.

As a threshold matter, we set forth the standard by which an appellate court reviews the propriety of a trial court's legal conclusions. "Where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct, and find support in the facts set out in the court's memorandum of decision. . . . The court's conclusions must stand unless they involve the application of some erroneous rule of law material to the case." (Citation omitted.) *Bowers* v. *Bowers*, 61 Conn. App. 75, 80, 762 A.2d 515 (2000), cert. granted on other grounds, 255 Conn. 939, 767 A.2d 1211 (2001).

Rule 1.5 (c) of the Rules of Professional Conduct provides in relevant part: "A fee may be contingent on the outcome of the matter for which the service is rendered . . . . *A contingent fee agreement shall be in writing* and shall state the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated. . . ." (Emphasis added.)

The court found that the plaintiff had established by clear and convincing evidence that there was no written fee agreement between Parsons and the defendant concerning the accident case. Moreover, Parsons and the defendant testified that no agreement existed. On the basis of those facts, the court found that the defendant "was ethically required to have a written fee agreement

with Parsons" and concluded that he had violated rule 1.5 (c).

The defendant also claims that he regularly represented Parsons and that an understanding had evolved between them regarding his fee. That argument seems to arise under rule 1.5 (b) of the Rules of Professional Conduct, which provides in relevant part that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee . . . shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation. . . ." Rule 1.5 (b), however, does not exempt the defendant from obtaining a written fee agreement as required by rule 1.5 (c) for contingency fee matters. Although the defendant represented Parsons in other matters and procured written fee agreements from her for those matters, he still was required to follow rule 1.5 (c) for the contingency case despite his prior dealings with Parsons.

There is no dispute that the defendant failed to memorialize a contingency fee agreement in connection with the accident case. Additionally, the facts set out in the court's memorandum of decision find ample support in the record. Therefore, we conclude that the court correctly concluded that the defendant violated rule 1.5 (c).

### III

The defendant also claims that the court improperly determined that he violated rule 1.5 (e) of the Rules of Professional Conduct. He claims that Parsons knew of McCann's bill for services rendered. We disagree.

Rule 1.5 (e) provides: "A division of fee between lawyers who are not in the same firm may be made only if: (1) The client is advised of the compensation sharing agreement and of the participation of all the

lawyers involved, and does not object; *and* (2) The total fee is reasonable." (Emphasis added.)

The court found that the defendant and McCann were not lawyers in the same firm. It further found that the plaintiff "has established by clear and convincing evidence that Parsons did not know that [the defendant] planned to disburse $3000 of her gross settlement proceeds to McCann, did not consent to the disbursement and did not know until March, 1998, that [the defendant] had in fact disbursed $3000 to McCann. The only notice regarding McCann's bill that [the defendant] gave to Parsons is the statement in the August 24, 1995 settlement letter . . . that he was holding the remainder of her gross settlement in escrow to defend against McCann's bill. [The defendant] himself testified that Parsons disputed the payment of legal fees to McCann and that is the reason he did not immediately disburse a fee to McCann. These facts clearly and convincingly establish a violation of rule 1.5 (e)."

We reiterate that a court's conclusion of law must stand unless it involves the application of an erroneous rule of law. *Cummings* v. *Tripp*, 204 Conn. 67, 87, 527 A.2d 230 (1987). In the present case, pursuant to rule 1.5 (e) of the Rules of Professional Conduct, the defendant had an ethical obligation to inform his client of any proposed arrangement with McCann. The defendant, however, failed to advise Parsons of the disbursement, failed to obtain her consent regarding the disbursement and, furthermore, knew that Parsons objected to the disbursement and paid McCann anyway.[3] Therefore, the

---

[3] Not only did the defendant fail to satisfy the first prong of rule 1.5 (e), but he also failed to meet the rule's second prong by charging Parsons an unreasonable attorney's fee. The amount of the attorney's fee was unreasonable pursuant to General Statutes § 52-251c, which provides in relevant part: "(a) In any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property . . . the attorney and the claimant may provide by contract . . . that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) Damages awarded and received by the claimant; or (2) settlement amount pursuant to a settle-

record amply supports the court's decision that the defendant violated rule 1.5 (e) of the Rules of Professional Conduct.

## IV

The defendant finally claims that the court improperly imposed an excessive punishment and, in effect, included punishment for another grievance case on appeal at the time that he filed his brief, but which has since been dismissed. We disagree.

"A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession. . . . Inherent in this process is a large degree of judicial discretion. . . . A court is free to determine in each case, as may seem best in light of the entire record before it, whether a sanction is appropriate and, if so, what that sanction should be." (Citations omitted.) *Statewide Grievance Committee* v. *Fountain*, 56 Conn. App. 375, 378, 743 A.2d 647 (2000).

"[A]lthough our review of grievance proceedings is restricted, we recognize the seriousness of the interests that we must safeguard. We have a continuing duty to make it entirely clear that the standards of conduct,

---

ment agreement.

"(b) In any such contingency fee arrangement such fee . . . *shall not exceed* an amount equal to a percentage . . . of the settlement amount received by the claimant as follows: (1) *Thirty-three and one-third per cent* of the first three hundred thousand dollars . . . ." (Emphasis added.)

Here, the defendant procured a settlement in the amount of $20,000 for Parsons and, under the contingency fee statute, the attorney's fee was limited to 33 1/3 percent of that amount. The defendant charged Parsons $6,666.66 for his legal fees and $3000 for McCann's legal fees. Consequently, Parsons' fees amounted to almost 50 percent of the settlement amount, which is in violation of the 33 1/3 percent limit set forth in § 52-251c. Thus, the defendant's assessment of almost 50 percent in attorney's fees in connection with a $20,000 settlement for one accident case was unreasonable.

nonprofessional as well as professional, of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . ." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 679, 646 A.2d 781 (1994).

The court's memorandum of decision reflects its careful consideration of the facts relevant to its determination of an appropriate sanction. With regard to aggravating factors, the court stated that the defendant had a significant history of disciplinary actions and that four different instances had been brought to the court's attention. Furthermore, the defendant "was not only unwilling to acknowledge that he did anything wrong but sought to blame Parsons for his ethical failings." Finally, the court found that the defendant's "unwillingness to accept responsibility and his victimization of his clients also appears to be long-standing."

With respect to mitigating circumstances, the court acknowledged that the defendant did not appear to have "a dishonest or selfish motive in his handling of the accident case." Nonetheless, on the basis of his "entrenched patterns of financial misconduct, inattention to ethical considerations and mismanagement of his law office," the court reasonably concluded that the defendant was unfit to practice law and that a nine month suspension from the practice of law was necessary for "the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing." *Grievance Committee* v. *Broder*, 112 Conn. 263, 265, 152 A. 292 (1930).

The judgment is affirmed.

In this opinion the other judges concurred.